Honorable J Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHEN BARTON,<br><br>Plaintiff<br>v.<br><br>JOE DELFGAUW, XANADU MARKETING INC., EXPERIAN INFORMATION SOLUTIONS INC., STARTER HOME INVESTING INC, & JOHN DOE 1-10<br><br>Defendant(s). | CASE NO. **3:21-cv-05610-JRC**<br><br>MOTION FOR RULE 37 RELIEF<br><br>NOTE ON MOTION CALENDAR:<br>JUNE 24, 2022 |

PLEASE TAKE NOTICE that Plaintiff Nathen Barton (hereinafter referred to as "Plaintiff") moves the Court to for relief under Federal Rule of Civil Procedure 37.

## I.   INTRODUCTION

At the heart of this case is consent – Did the Defendants telemarket Barton without consent or invitation, *or* did Barton fraudulently "opt in" with the hope that the Defendants would telemarket Barton and Barton could sue them.

The Defendants produced two documents they claim show "opt ins" that gave them consent to telemarket the phone number at issue. These two nearly identical documents purport to list each "opt in" and the IP address of the "opt ins"[1].

These documents in Table A and Table B were turned over to Plaintiff in 2021.

*Table A*

| ID | Campaign | Day/Time | First | Last | Phone | Email | Actions |
|---|---|---|---|---|---|---|---|
| 367588486 | 12130 | 2021-04-30 15:50:09 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | View |
| 367588483 | 12130 | 2021-04-30 15:50:08 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | View |
| 362407192 | 12130 | 2021-04-13 17:58:07 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | View |
| 362407183 | 12130 | 2021-04-13 17:58:02 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | View |
| 361284364 | 13690 | 2021-04-09 18:29:38 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | View |
| 358819495 | 3824 | 2021-04-01 14:04:11 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | View |

This second related document added the IP address of each alleged "opt in".

*Table B*

| id | campaign_id | first | last | phone | email | ip | datetime |
|---|---|---|---|---|---|---|---|
| 358819495 | 3824 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | 71.238.123.34 | 4/1/2021 14:04 |
| 361284364 | 13690 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | 71.238.123.34 | 4/9/2021 18:29 |
| 362407183 | 12130 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | 8.8.8.8 | 4/13/2021 17:58 |
| 362407192 | 12130 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com |  | 4/13/2021 17:58 |
| 367588483 | 12130 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com | 8.8.8.8 | 4/30/2021 15:50 |
| 367588486 | 12130 | Ivette | Jimenez | 3609101019 | ivettealfredomartinez@gmail.com |  | 4/30/2021 15:50 |

These "opt ins" and IP address 71.238.123.34 are key – the Defendants allege to have IP geolocated the "opt ins" to near Plaintiff's residence and use this as a basis to claim Plaintiff "opted in" and caused them harm. This allegation is the basis of their counterclaim.

## II.     FRCP 37(C)(1) DUTY TO DISCLOSE A WITNESS

FRCP 37(c)(1) says in relevant part:

"Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

---

[1] The Defendants are having difficulty deciding just how many IP addresses were used to "opt in".

The Defendants only disclosed three witnesses under FRCP 26(a):

> 1. The following two persons would have or would be able to obtain discoverable information pertaining to Opt-in information, personnel, messages sent, and corporate structure.
>
> Joe Delfgauw – Defendant and President of Defendant Xanadu Marketing Inc.
> 956 3 Mile Road N.W., Grand Rapids, MI 49544
> (248) 890-5900
>
> Edward Winkler – Personal attorney for defendant Joe Delfgauw and corporate counsel for defendant Xanadu Marketing Inc.
> 956 3 Mile Road N.W., Grand Rapids, MI 49544
> (616) 570-0320
>
> Alex Jakimtschuk – Employee of Mountain Top Affiliate Network that handles defendant Xanadu's account. Mr. Jakimtschuk has provided Mr. Winkler with information regarding damages.
> 2623413 Ontario LTD. 2422 Robin Dr. Mississauga, ON L5K1S9

Further, Defendants were asked specifically who could swear under penalty of perjury that the information in Table A was genuine. They responded again with only Edward Winkler and Joe Delfgauw[2].

> **INTERROGATORY NO. 16:**
>
> You turned over the following document. Give the name and address of every person who can swear under penalty of perjury that no piece of data in this document has been doctored.
>
> RESPONSE TO INTERROGATORY 16:
> Edward Winkler – Mail can be sent to 956 3 Mile Road N.W., Grand Rapids MI 49544
> Joe Delfgauw – Mail can be sent to 956 3 Mile Road N.W., Grand Rapids MI 49544

Consistent with this response, they did not supplement their witness list according to FRCP 26(e) at any point in this litigation.

---

[2] 3.20.2022 Xanadu Interrogatories 4.pdf

In Depositions held on May 18, 2022, Edward Winkler and Joe Delfgauw each testified that they themselves cannot personally attest to the accuracy of the information in Table B, and said other people as the source of the document but they were not certain as to who.

### III.   DEFENDANTS DID NOT DISCLOSE WHO CAN TESTIFY TO THE ACCURACY OF TABLE B

### Mr. Winkler cannot testify to the accuracy of Table B

Specifically, during the Edward Winkler ("Winkler") deposition (attached at Exhibit A), he testified as follows (starting at Exhibit A, Page 5, line 10, with emphasis added):

Q. So do you recognize this document [**Table B**] that the Defendants turned over to me?

A. As far as I'm seeing, yes, it looks like a spreadsheet.

Q. Yes. So I have asked the Defendants who on their side could testify that every piece of information in this spreadsheet is correct and true and your name was one of the responses. Can you swear that every piece of information in this document is true, correct, and is not modified by any Defendant or any agent of the Defendants?

A. To the best of my knowledge, yes.

Q. So how do you know that the IP addresses are what the document says they are?

A. **I'm not a technical person. I'm the attorney.  It was forwarded to me with that information.**

Q. Okay. So you can't swear that --

A. I can't say that this -- I can't say that this is the correct IP addresses. I'm not the one who runs the software and captures that information.

Q. So you simply obtained the document already as it exists right now?

A. Yes.

Q. Have you gone yourself and verified the information with the company database?

A. Excuse me?

Q. **Did you go and verify the information in the spreadsheet with the company databases?**

A. **I don't have an answer to that. I'm the attorney.**

Q. Just no is what I'm looking for. So the answer is no?

A. Other than looking it up, yeah. No.

Q. **So who did you obtain this document from?**

A. **It came from the developers who run the software.**

Q. Did you obtain the document already printed on a piece of paper or did you obtain this document as an electronic file?

A. **I received it as an attachment in an e-mail.**

## Mr. Delfgauw cannot testify to the accuracy of Table B

During the Joe Delfgauw ("Delfgauw") deposition (attached at Exhibit B), he testified as follows (starting at Exhibit B, Page 38, line 11, with emphasis added):

Q. Do you recognize this document [Table B]?

Skipping ahead to Exhibit B, Page 39, line 9:

Q. Does this document [Table B] look familiar?

A. It does. I mean similar, yes.

Q. Do you know where this document came from?

A. It probably would have come from our internal CRM that we call KP.

Q. Is this -- so it looks to me like an Excel spreadsheet. Is that an Excel spreadsheet?

A. I don't think it's an Excel. Excel is obviously a licensed product from Microsoft. I don't think it's Excel. I think it's just our internal data.

Q. You generated this document? By you, your --

Skipping ahead to Exhibit B, Page 49, line 16:

Q. Okay. **So can you actually testify that this data [Table B] is true and correct?**

A.   **I can testify that that's the data we provided from the developer that provided it to me.**

Q.   **So you're testifying that someone actually gave you this information?**

A.   **Yeah. I don't know -- I'm not a developer, I'm not a programmer.**

Q.   **Who is the person that gave you this information?**

A.   **The person that developed KP -- his name is Kyle VanLu (ph).**

Q.   **And do you believe that he's the person that generated this spreadsheet?**

A.   **I believe he's the developer that developed this entire spreadsheet system. Yes. So do I think that he did this, yes, but I don't -- I can't -- I wasn't sitting next to him when he did it. I don't know.**

### Summary

In Interrogatory 16 the Defendants said Delfgauw and Winkler could vouch for the accuracy of the "opt in" data. In Delfgauw's and Winkler's depositions they testified that they cannot, and they could not even name a person who could with any confidence.

At best, Mr. Delfgauw says "I think" it was a Kyle VanLu. Mr. VanLu was not cited a as witness as required by FRCP 26(a) or FRCP 26(e). As the deadline to for motions related to discovery has past, they cannot now supplement in a timely manner.

### IV.   CONCLUSION

Plaintiff started each deposition asking about the "opt in" data because that is the crux of the contention between the parties. The Defendants did not see fit to name anyone as a witness could provide a foundation the 'opt in' data.

Specifically, Table B contains the IP addresses, and without someone who can testify to the accuracy of this information, the Defendants have no information at all as to the identify of who "opted in". Thus, failing to name a witness who could testify to the accuracy of the IP address information in particular could not be due to oversight.

Plaintiff moves the Court to for an order preventing Defendants from using any person not already identified in their FRCP 26 disclosure as a "witness to supply evidence on a motion, at a hearing, or at a trial" for any evidence related to Table A or Table B.

This is, in essence, a motion to suppress the information in Table B as they should not now be allowed to spring a surprise witness into their Disclosure.

_____s/ Nathen Barton_____      \_\_\_\_6/7/2022\_\_\_\_\_
        (signed)                                        (Dated)

Nathen Barton
(718) 710 5784
4618 NW 11th Cir
Camas WA 98607

### CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court using the Electronic Filing (CM/ECF) system, which will send notification of such filing to all counsel of record and all pro se parties registered to use the CM/ECF system.

_____s/ Nathen Barton_____      \_\_\_\_6/7/2022_____
     Nathen Barton                                  (Dated)