UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON,<br><br>                    Plaintiff,<br><br>         v.<br><br>JOE DELFGAUW et al.,<br><br>                    Defendant. | CASE NO. 3:21-cv-05610-DGE<br><br>ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. NO. 397) AND ORDER TO SHOW CAUSE |

## I        INTRODUCTION

Before the Court is Plaintiff's Motion for Summary Judgement on Defendants' Counterclaim. (Dkt. No. 397.) For the reasons that follow, the motion is GRANTED.

## II        BACKGROUND

This is a long running action under the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges that Defendants sent marketing text messages to his phone despite its listing on the Do Not Call registry, in violation of the TCPA. (*See generally* Dkt. No. 83; *See* Dkt. No. 1 at 5.) Defendant Joe Delfgauw and co-defendant entities under his control answered with a

counterclaim alleging fraud and "fraud by nondisclosure." (Dkt. No. 20.)  The nature of the allegation has evolved over the course of the litigation, but as it stands now: Counterclaimants allege that Barton used the identity of another individual, Ivette Jimenez, to opt-in to text messages.  (*See* Dkt. No. 403 at 1–2.)  Plaintiff Nathen Barton is a serial TCPA litigant, proceeding *pro se*, and the crux of the counterclaim is that Barton is fraudulently manufacturing TCPA claims to make money.  (*See id.* at 3.)

Previously, Judge Richard Creatura denied Plaintiff's motion to dismiss the counterclaim, finding that it was stated with sufficient particularity to satisfy the requirements of Federal Rule of Civil Procedure 9(b). (Dkt. No. 45 at 3–4.)  At the time, the Court commented that "[t]he lack of further factual detail sought by plaintiff can be addressed through discovery and does not warrant dismissal at this stage." (*Id.* at 4.)  That was the first of several motions.  As this Court noted in its Order Granting Leave to File a Dispositive Motion (Dkt. No. 396 at 1), Plaintiff filed numerous dispositive motions, including for summary judgment (Dkt. Nos. 122, 173, 181, 249, 251) and default (Dkt. Nos. 99, 327, 358, 368), all of which were denied or stricken.  The first three of Plaintiff's motions for summary judgement (Dkt. Nos. 122, 173, 181) were stricken as premature because discovery was still ongoing.  (Dkt. No. 152, 194.)

In November 2022, both parties cross-moved for summary judgement on the underlying dispute and counterclaim.  (*See* Dkt. Nos. 247, 249, 251, and 253.)  Judge Creatura denied those motions, finding that there was disputed evidence triable by a jury.  (Dkt. No. 276).  In that order, Judge Creatura noted that Defendants had produced "significant circumstantial evidence" that Plaintiff had consented to text messages and engaged in a fraudulent scheme.  (*Id.* at 4.)  That evidence included: evidence that the opt-in to text messages occurred after Plaintiff took possession of the phone number, and deposition testimony of the former owner of the phone

ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. NO. 397) AND ORDER TO SHOW CAUSE - 2

1  number, Ivette Jimenez, that she did not opt in. (*Id.* at 7, citing Dkt. No. 248-4 at 2, 248-3 at 4–

2  5.) Further, Plaintiff had used the same number in a different lawsuit in this district and had

3  founded a "TCPA University" to train people to collect "tens of thousands of dollars" in TCPA

4  claims. (*Id.*)[1]  Based on this evidence, the Court concluded that "[a] reasonable inference can be

5  made that plaintiff consented to be contacted so that he may bring a TCPA claim as business."

6  (*Id.* at 8.) The Court similarly denied summary judgement on the counterclaim for fraud, finding

7  that it was bound up in the same fact issues as to whether Plaintiff "provided consent to

8  manufacture a TCPA claim." (*Id.* at 12.)

9  Following that denial of summary judgement, the parties began preparing for trial. As

10 relevant here, among those preparations was that the parties submitted Joint Stipulated Facts.

11 (Dkt. No. 378.) Those stipulated facts include significant concessions by Defendants and appear

12 one-sided, see *infra*, yet Defendants have not—to this point—challenged their legitimacy or

13 disavowed them. Plaintiff filed a Motion for Leave to File a Dispositive Motion seeking to file a

14 renewed motion for summary judgement on the counterclaim, largely on the basis of the

15 stipulations. (Dkt. No. 386.) This Court granted leave to file the renewed motion, observing that

16 the stipulated facts "cast doubt on Defendants' ability to continue pressing their counterclaim."

17 (Dkt. No. 396 at 1–2.) This motion, and Defendants' response, followed. (*See* Dkt. Nos. 397,

18 403.)

---

[1] Judge Creatura also relied on Defendants' citation to another decision in this district finding that Plaintiff had filed a frivolous and harassing TCPA lawsuit, *Barton v. Leadpoint, Inc.*, No. C21-05372-BHS, 2022 WL 1746664, at *3 (W.D. Wash. May 31, 2022) (*see* Dkt. No. 276 at 7), but that judgement has since been reversed by the Ninth Circuit. *See Barton v. LeadPoint, Inc.*, No. 22-35691, 2023 WL 4646103, at *1 (9th Cir. July 20, 2023).

### III    DISCUSSION

Because the Court believes that the joint stipulations and Defendants' admissions will make it impossible for Defendants to carry their burden of proof on their counterclaim at trial, the Court GRANTS the motion for summary judgement.

    a.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgement should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." But even when there is a factual dispute between the parties, the court must still determine if that dispute is "genuine." As the Supreme Court has explained, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). For that reason, the summary judgement inquiry "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252. Further, not all evidence may be considered. "In general, only admissible evidence may properly be considered by a trial court in granting summary judgment." *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1335 n.9 (9th Cir. 1980) (citing *United States v. Dibble*, 492 F.2d 589, 601–02 (9th Cir. 1970)).

Here, Defendant has asserted two counterclaims: fraud, and "fraud by nondisclosure." (Dkt. No. 20.) The elements of fraud in Washington law are:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012). All nine elements must be established by "clear, cogent, and convincing evidence." *Id.*

      b. <u>Analysis</u>

          i. Fraud

Because of Defendant/Counterclaimant's stipulations and admissions, and their lack of independently supporting evidence, the Court finds that there is no longer a triable jury question as to common law fraud. The Court starts its analysis with the parties' stipulations, which are as follows:

> ¶4    During the times relevant to this lawsuit Joeseph Deflgauw and the entities under Joeseph Deflgauw's control simply assumed all the information submitted during the "opt in" process was correct, and they didn't take any actions to verify the accuracy of the "opt in" information submitted. Likewise, they took no steps to verify if the owner of the email address ivettealfredomartinez@gmail.com was the same person who had use of the phone number (360) 910 1019.
>
> ¶5    Xanadu could have verified that the person in possession of the phone wanted Xanadu's text messages by requiring them to respond to a question to complete the 'opt in', or asking them to reply back with a specified response to confirm the "opt in".
>
> ¶6    The language the Defendants' claim Barton agreed to on educationschoolmatching.com by checking a box and clicking submit said entering in a phone number or email address on the website was only consenting to receive messages from a specific list of partners. None of the text messages Starter Home or Xanadu sent to (360) 910 1019 was from this specific list of partners.
>
> ¶7    Before Starter Home Investing Inc sent the seven text messages to (360) 910-1019 on April 1, 2021, advertising goods or services from Degree Locate, Get Hope To Own, *credit-score-first.com*, *yourent2own.com*, Lawsuit Winning, Lions Gate Loans, Honest Loans, and Classes & Careers, entities Degree Locate, Get Hope To Own, *credit-score-first.com*, *yourent2own.com*, Lawsuit Winning, Lions Gate Loans, Honest Loans, and Classes & Careers, Starter Home Investing Inc. and Xanadu Marketing Inc. did not have the invitation or consent from Barton to do so.
>
> . . . .

¶17    IP address 8.8.8.8 is the IP address of a Google Public DNS server.

¶18    The opt-ins of phone number (360) 910-1019 on *educationschoolmatching.com* during the times relevant to this lawsuit were from IP addresses 71.238.123.34 and 8.8.8.8 and the same entity did them both.

(Dkt. No. 378 at 2–3.)

The signatures of both Plaintiff Nathen Barton, and attorney Donna Gibson on behalf of defendants Joe Delfgauw, Starter Home Investing, Inc., and Zanadu Marketing, Inc. (also referred to as "Xanadu"), appear on the stipulation.  (Dkt. No. 378 at 4.)  The language of the stipulation appears to have been written by Plaintiff and is one-sided in his favor, yet for whatever reason—be it strategic or lack of proper diligence—Defendants signed-on.  In their response to Plaintiff's summary judgment motion, Defendants point out what they did not stipulate to—the ultimate identity of the person who made the opt-in to consent to text messages (*see* Dkt. No. 403 at 5)—but they *do not* claim that the stipulation is itself fraudulent or inaccurate.

Thus, the Court will treat the stipulation as a binding statement of undisputed facts for trial and for the purposes of this motion.  The Supreme Court has "long recognized" that litigants "[a]re entitled to have [their] case tried upon the assumption that ... facts, stipulated into the record, were established." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 676 (2010) (quoting *H. Hackfeld & Co. v. United States,* 197 U.S. 442, 447 (1905)).  "This entitlement is the bookend to a party's undertaking to be bound by the factual stipulations it submits." *Id.*  Likewise, the Ninth Circuit has commented that "stipulations of fact, when fairly entered into, are controlling on the participating parties and on the trier of fact without further evidence" (as opposed to stipulations of law, which do not control). *Congoleum Indus., Inc. v. Consumer Prod. Safety Comm'n*, 602 F.2d 220, 223 (9th Cir.

1979).  And although the parties stipulated to these facts for trial, they are relevant for this motion too, since "the facts to which a party has stipulated remain binding on that party throughout the various phases of the same case." *In re Jun Ho Yang*, 698 F. App'x 374 (9th Cir. 2017).  The fraud counterclaim is a state law claim, and the Supreme Court of Washington has likewise recognized that "factual stipulations are generally binding on the parties and on the court." *Ross v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 252, 257 (Wash. 1997); *ibid.* at 255 ("[b]ecause the facts were stipulated, there [was] no dispute of material facts.").

      In light of these stipulated facts and the lack of other supporting evidence, it will be impossible for Defendants/Counterclaimants to carry their burden by "clear, cogent, and convincing evidence" on all nine elements of fraud.  The problems start from the first element, representation of an existing fact.  Defendants seem to conflate this element with falsity, offering conclusory statements that Barton "entered false information into defendants/counterclaimants' system during an opt-in" without citation to the record.  (Dkt. No. 403 at 7.)  The representation itself is not the falsity (more on that later), but rather the fact of the opt-in: that the owner of the (360) 910 1019 number consents to text messages via opt-in.  But the parties stipulated that the opt-in provided consent to text messages only for a "specific list of partners" and that "[n]one of the text messages Starter Home or Xanadu sent to (360) 910 1019 was from this specific list of partners." (Dkt. No. 378 at 2, ¶ 6.)  Assuming that to be true, Defendants/Counterclaimants cannot claim they had a representation of consent to send text messages from the non-partner entities to begin with.

      The second element of fraud, materiality of the representation, is easily established.  Consent is a defense to a TCPA action (*see* 47 U.S.C. § 227(b)(1)(A)), the opt-in is a representation of consent, and the identity of the person submitting the opt-in is at issue.

ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. NO. 397) AND ORDER TO SHOW CAUSE - 7

But the third element of fraud, falsity, is the core of the matter and where Defendants/Counterclaimants have multiple obstacles.  For one, Defendants/Counterclaimants have stipulated away their claim.  Paragraph 7 states that when the specified entities sent texts to (360) 910 1019 they "did not have the invitation or consent from Barton to do so."  (Dkt. No. 378 at 2, ¶ 7.)  That is entirely inconsistent with their theory of the case, which is that Barton—and not Ivette Jimenez or anyone else—in fact consented to text messages by generating the opt-ins in someone else's name.  Moreover, the parties stipulated that Defendants/Counterclaimants have no way to prove or disprove the identity of an opt-in; rather they "simply assumed all the information submitted during the "opt in" process was correct" and took "no steps" to verify the identity of the opt-in. (Dkt. No. 378 at 2, ¶ 4.)  Likewise, Defendants/Counterclaimants answered in a request for admission that "[t]here is no way to verify" the identity of an opt-in "short of contacting the number provided" and instead asserted that "[o]pt-ins are based on trust that the person opting-in is honest and genuine and not misusing federal law to obtain profit." (Dkt. No. 250-14 at 28.)  Their own declaration in opposition to summary judgement confirms that "there is currently no way for us [t]o confirm[] that information," referring to opt-in identity. (Dkt. No. 404 at 3.)  Defendants/Counterclaimants' affirmative arguments fare no better.  They assert that "he HIMSELF stated that he received the text message, which was sent immediately after the op-in" and clicked on it, referring to Barton, but offer no citation to the record, nor explain how receiving the text message at issue is tantamount to giving consent for the text messages.  (*See* Dkt. No. 403 at 4–5.)  In light of the above, the Court does not see how Defendants/Counterclaimants can prove by *clear and convincing* evidence that it was in fact Barton who submitted the opt-in.

ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. NO. 397) AND ORDER TO SHOW CAUSE - 8

1    Even setting aside the stipulations, Defendants/Counterclaimants have failed to show that there is a genuine dispute of material fact by reference to admissible evidence.  In support of their claim, Defendants/Counterclaimants produce a document showing the IP addresses and other information associated with the opt-ins at issue.  (Dkt. No. 404-1 at 1.)  This appears to be generated from a database of contacts, showing six entries in the name Ivette Jimenez for the phone number 360-910-1019 and email address ivettealfredomartinez@gmail.com, with two of the entries associated with IP address 71.238.123.34, two associated with IP address 8.8.8.8, and two having no associated IP address.  (*Id*.)  The entries were made between April 1 and April 30, 2021.  (*Id.*)  Accompanying these is a printout from a public IP address geolocation website, showing that the address 71.238.123.34 was located in Camas, Washington as of October 1, 2021.  (*Id.* at 2.)  Plaintiff Nathen Barton lives in Camas, WA.  (Dkt. No. 397 at 13.)

Although this evidence is probative, there are several reasons why it is insufficient to overcome the motion for summary judgement.  For one, the evidence is inadmissible.  Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *See also Dibble*, 429 F.2d at 602 (rejecting an affidavit on summary judgment because it "was not made on personal knowledge; it did not set forth facts as would be admissible in evidence; and it did not show that [the affiant] was competent to testify to the matters stated therein.").  That requirement has not been satisfied.  The evidence is offered on the affidavit of Defendant Joe Delfgauw, the owner of the telemarketing agencies who are co-defendants in the case (Xanadu Marketing, Inc. and Starter Home Investing, Inc.).  (Dkt. No. 404 at 1.)  Delfgauw states that the IP addresses were "confirmed by documents from Forward Control Software and Elite Marketing Services," two

entities that are presumably vendors to Delfgauw's companies.  (*See id.* at 3.)  Delfgauw provides no information about who generated this report who could be called at trial to authenticate it, nor any details of when or how the data was collected and reported.  As such, the report (in its current form) is inadmissible hearsay.  *See generally* Fed. R. Ev. 801; 901.[2]  Nor does Delfgauw state that he has personal knowledge of how the report was produced.  Further, the declaration provides no information at all about how the IP address geolocation was generated, including who made the report.

Even if this evidence could be produced in an admissible form, it would not be sufficient—at least not on the current record.  Defendants/Counterclaimants provide threadbare information as to what their evidence actually shows. There is no information for instance about how accurate and specific an IP geolocation is, and whether the location of an IP address can change over time (e.g., the opt-ins were made in April 2021, but the IP geolocation is from October 2021).  (*See* Dkt. No. 122 at 5, 11–12.)  At best, Defendants/Counterclaimants can show that someone in Camas, WA was responsible for two of six opt-ins in their record.  That will not be enough to prove by "clear, cogent, and convincing evidence" that Nathen Barton is the source of the opt-ins.

Moving on to the other elements of fraud, factors four and five fail for the same reasons—if Defendants/Counterclaimants cannot prove the falsity of the statement, they cannot prove Barton's knowledge of the falsity, nor his intent for them to act on it.  Factor six likewise assumes the falsity of the representation.  Defendants/Counterclaimants can prove factor seven, that they relied on the opt-in.  But factor eight may be more difficult.  Due to

---

[2] The IP addresses of opt-ins may be kept as a business record, but Defendants/Counterclaimants fail to state that this report was "kept in the course of a regularly conducted activity of a business" as opposed to being produced specifically for this litigation.  *See* Fed. R. Ev. 803(6).

ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. NO. 397) AND ORDER TO SHOW CAUSE - 10

Defendants/Counterclaimants stipulating that they "simply assumed all the information submitted during the "opt in" process was correct" and took "no steps" to verify that information (Dkt. No. 378 at 2, ¶ 4) there is a question as to how reasonable their reliance on that information is—though the Court need not resolve that question.[3] As to factor nine, damages, Defendants/Counterclaimants state that there would be damage to their "reputation and loss of business," which is plausible but not supported by any evidence. (Dkt. No. 403 at 8.)

Finally, the Court notes a global argument advanced by Defendants/Counterclaimants: that because Barton is a serial TCPA litigant, he must be committing fraud here. (Dkt. No. 403 at 6.) They point to Barton's TCPA University website. (*Id.*) They also cite to two cases where they say it was "proven previously" that Barton "induced" contacts to create claims: *Barton v. Leadpoint*, No. C21-5372 BHS 2022 WL 293135 (W.D. Wash. Feb. 1, 2022) ("*Leadpoint I*") and *Barton v. Walmart*, 254 So. 3d 796 (La. Ct. App. 2018). (*See id.* at 5–6.) In the specific order from *Leadpoint I* that Defendants/Counterclaimants reference, the court denied a motion for reconsideration, refusing to remove reference to Barton "manufacturing" a TCPA claim from a prior order. However, Defendants/Counterclaimants fail to note that the Ninth Circuit ultimately reversed an attorney fee award against Barton based on a frivolousness or bad-faith in *Leadpoint I*, holding that "[t]he mere fact that Barton is a frequent TCPA litigant does not evince bad faith, and there is no other evidence to that effect." *Barton v. LeadPoint, Inc.*, No. 22-35691, 2023 WL 4646103, at *2 (9th Cir. July 20, 2023). Even more seriously, the claim regarding *Barton v. Walmart* is a flatly false misstatement of law and fact: that case involved a *Douglas* Barton who slipped and fell in a Walmart store and does not in any manner "prove" that Nathen

---

[3] The Court notes that this analysis is limited to common law fraud under Washington State law, and does not imply that reasonable reliance is an element of consent for purposes of a TCPA claim.

ORDER GRANTING SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS (DKT. NO. 397) AND ORDER TO SHOW CAUSE - 11

Barton "induced" a TCPA claim.  Accordingly, the Court will issue an Order to Show Cause why Defendants' counsel should not be sanctioned under Federal Rule of Civil Procedure 11(b) based on what appears to be an attempt to mislead the Court about facts and circumstances that clearly are inapplicable to the facts and issues raised in this litigation.

In sum, Defendants/Counterclaimants must be able to prove all nine factors of common law fraud by "clear, cogent, and convincing" evidence, but they fail at multiple steps.  For that reason, summary judgement on the fraud counterclaim is granted.

ii. "Fraud by Nondisclosure"

The second counterclaim is easily dispensed with.  Defendants/Counterclaimants have not stated the elements for a "fraud by nondisclosure" claim in their answer/counterclaim (Dkt. No. 39 at 12–13),[4] and the only cause of action by that name the Court can identify in Washington law involves failure to disclose defects in real property, which is not relevant here. *See e.g., Gunnar v. Brice*, 565 P.2d 1212, 1214 (Wash. Ct. App. 1977); *see also Stieneke v. Russi*, 190 P.3d 60, 68 (Wash. Ct. App. 2008) (describing the elements of fraudulent concealment, the first of which is "the residential dwelling has a concealed defect.").  Another court in this district, considering another case between this same *pro se* litigant and defense counsel, granted summary judgment against a "fraud by nondisclosure" counterclaim for similar reasons.  *See Barton v. Serve All, Help All, Inc.*, 2023 WL 1965905 at *11 (W.D. Wash. Feb. 13,

---

[4] In a previous motion for summary judgement, Defendants/Counterclaimants stated that the elements of "fraud by nondisclosure" are (1) a party conceals a material fact; (2) the fact is within the concealing party's knowledge; (3) the concealing party knows that the acting party will rely on this nondisclosure on the presumption that the fact does not exist; and (4) the concealing party has a legal/equitable duty to communicate the fact. (Dkt. No. 253 at 9.)  They cite no legal authority that such a cause of action exists in Washington law.  They instead cite a case interpreting Minnesota law, which does not state this purported standard and is of no relevance here.  *Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1064 (D. Minn. 2001).

2023).  That court noted that under Washington law, "the duty to disclose arises only in the context of an inherently fiduciary relationship or some type of special relationship of trust and confidence giving rise to quasi-fiduciary duties of disclosure."  *Id.*  (quoting *Baker Boyer Nat'l Bank v. Foust*, 436 P.3d 382, 389 (Wash. Ct. App. 2018)).  Accordingly, this Court will grant summary judgment against the "fraud by nondisclosure" counterclaim.

## IV   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgement on Defendants' Counterclaim (Dkt. No. 397) is GRANTED.  In light of the above, the Court invites a renewed motion for summary judgment on the underlying TCPA claim, and once more encourages the parties to discuss a settlement to their dispute.  Plaintiff shall file his renewed motion for summary judgment no later than November 22, 2024.

In addition, Defense counsel is ORDERED to show cause no later than November 12, 2024, why counsel should not be sanctioned under Federal Rule of Civil Procedure 11(b) for citing a decision that is clearly inapplicable to the facts and issues raised in this litigation.

The Clerk is directed to calendar the events contained in this Order.

DATED this 1st day of November 2024.

David G. Estudillo
United States District Judge