UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JOE DELFGAUW et al.,<br><br>　　　　　　　Defendant. | CASE NO. 3:21-cv-05610-DGE<br><br>ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) |

## I    INTRODUCTION

This case is about purported violations of the Telephone Consumer Protection Act (TCPA), but this order is about the incompetence and misconduct of the parties that have prevented resolution of this matter for nearly four years.  To put it bluntly, this case has gone off the rails in terms of how civil litigation is supposed to proceed in federal court.  Recently disclosed evidence—which is extremely untimely—casts doubt on the central claims in the case.  In this Order, the Court a) strikes existing motions on the docket, b) orders limited additional discovery on the newly disclosed evidence, c) imposes discovery sanctions under Rule 37 and

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 1

orders Defendants and their Counsel to Show Cause why they should not be sanctioned under Rule 11.

## II    BACKGROUND

Plaintiff, proceeding *pro se*, initiated this case on August 23, 2021 alleging TCPA violations by numerous entities; Defendant Delfgauw and his related entities (Xanadu Marketing, Starter Home Investing) are the only named entities remaining in the case. (*See* Dkt. No. 1.) Defendants are represented by counsel Donna Gibson, a member of the Washington Bar. (Dkt. No. 12.) Defendants asserted a counterclaim of common law fraud, as well as "fraud by nondisclosure." (Dkt. No. 20.) The nature of the fraud allegation is that Plaintiff used the identity of another individual, identified by the parties as either Ivette Jimenez or Ivette Martinez, to opt-in to phone calls or texts and generate claims for litigation. (*See* Dkt. Nos. 397 at 3; 403 at 5.)

The Parties engaged in discovery, which was closed as of September 23, 2022. (Dkt. No. 194.) In November 2022, the Court (Creatura, J.) denied cross-motions for summary judgment, finding that there were disputed questions of fact as to both the TCPA claim and fraud counterclaim. (Dkt. No. 276.) The Parties then began preparing for trial, but this Court struck their motions in limine and pretrial submissions, finding that they failed to comply with local rules and were inadequate. (Dkt. Nos. 329; 338 at 1.) The Parties submitted new pretrial orders, which the Court repeatedly found to still be deficient, and found that the Parties were unprepared to go to trial at the already-delayed date of June 17, 2024. (*See* Dkt. Nos. 370; 375; 376; 385.)

Among the Parties' pretrial preparations, they submitted a joint Stipulated Facts for Trial (Dkt. No. 378) that has become the source of numerous problems. The stipulation stated that Defendants have no means of verifying the identity of people who opt-in to calls and texts, that

1  Starter Home and Xanadu were not among the partner entities covered by the scope of the opt-in,
2  and that Defendants "did not have the invitation or consent from [Plaintiff]" to contact him.
3  (Dkt. No. 378 at 2, ¶¶ 4, 6, 7.)  On the basis of this stipulation, the Court granted a renewed
4  motion for summary judgment on the counterclaim, finding that the stipulations were binding
5  and that they made it impossible for Counterclaimants to carry their burden on the elements of
6  fraud.  (*See* Dkt. No. 416.)  The Court further held that evidence offered by Counterclaimants
7  purporting to show that calls were generated under the name Ivette Jimenez or Ivette Martinez
8  (the parties have used both names in their papers), and IP address location information, were not
9  offered in an admissible form and were insufficient.  (*Id.* at 9–10.)  The Court also held that
10 "fraud by nondisclosure" does not exist as a claim in Washington law, other than in the real
11 estate context.  (*Id.* at 12–13.)  The Court invited Plaintiff to submit a renewed motion for
12 summary judgment on the underlying TCPA claim, and ordered Defense counsel to show cause
13 why she should not be sanctioned for false and misleading case citations in her response brief.
14 (*Id.* at 11, 13.)  Plaintiff submitted his renewed motion for summary judgment.  (Dkt. No. 423.)

15       At issue now is another aspect of the joint stipulation, in which Defendants *stipulated* to
16 *purposefully destroying evidence*.  The Stipulation states "[t]he Dialer data was deleted to
17 deprive Barton of the evidence." (Dkt. No. 378 at 3, ¶ 30.)  Plaintiff previously brought a motion
18 for sanctions on the basis of this and other issues, moving under Federal Rule of Civil Procedure
19 37.  (*See* Dkt. No. 412.)  The basis of the motion was not clear to the Court at the time, and the
20 Court denied the motion in a short minute order, reasoning that discovery was long closed, and
21 so a motion for discovery sanctions was untimely.  Plaintiff filed a motion for reconsideration, in
22 which he clarified that the motion was based on the stipulation, which was more recent.  (Dkt.
23 No. 418.)  The Court ordered Defendants to respond, which they did.  (Dkt. Nos. 425, 429.)
24

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 3

In that response, Defendants disclosed, for the first time, that they have audio recordings of several of the calls at issue in the case. They placed those recordings on the record by affidavit of Ryan Becker, a systems administrator who manages servers for Xanadu and Starter Home. (Dkt. No. 430.) The Court has reviewed the recordings and, as discussed more fully *supra*, they appear to provide evidence of Plaintiff using a false identity in his calls with Defendant entities and provide new support for the fraud counterclaim.

Both parties in this case have repeatedly been subject to sanctions. Defendants were sanctioned $1,000 when they failed to respond to a sanctions motion, and both Parties were sanctioned for needlessly involving the Court in discovery disputes. (Dkt. Nos. 163; 244 at 5.) Plaintiff was sanctioned $500 for filing a motion to compel without "attempt[ing] to resolve this issue in good faith and without the Court's involvement." (Dkt. No. 244 at 5.) The Court also imposed a discovery sanction on Defendants when they failed to clearly respond to an interrogatory despite the Court granting a motion to compel. (*Id.* at 6; Dkt. No. 194 at 3.)

The Court held an order to show cause hearing on January 19, 2024 related to Plaintiff's motion for default or sanctions when Defendants were unprepared for an impending trial date. Defendant Delfgauw, who lives in Michigan, failed to appear at the hearing, which Counsel Gibson attributed to bad weather. (Dkt. No. 340 at 3.) Counsel Gibson discussed numerous challenges in her personal life, which had prompted her to file a motion to continue or withdraw just three weeks before a trial. (*Id.* at 4–7.) The Court observed that counsel was "close to a personal breakdown" and had a history of sanctions and bar discipline, and noted that there was a pending motion to withdraw admissions because counsel had failed to timely respond to requests for admission. (*Id.* at 7–9; *see* Dkt. No. 312.) The Court imposed sanctions of $2,500 each on Defendants and their Counsel, and granted the motion to continue, giving Counsel until February

1   28, 2024 to withdraw—which she ultimately did not do, and remains on the case. (*See* Dkt. No.
2   338.)

### III    ANALYSIS

**A. Plaintiff's Motion for Reconsideration (Dkt. No. 418) On Motion for Sanctions (Dkt. No. 412) is Granted, the Court Imposes a Rule 37 Sanction, And the Court Issues an Order to Show Cause Under Rule 11.**

There are several outstanding motions that require resolution. First, Plaintiff asks the Court to reconsider its prior order denying sanctions. (*See* Dkt. Nos. 412; 417; 418.) Under Local Civil Rule 7(h)(1), motions for reconsideration are disfavored, and will ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b) facts or legal authority which could not have been brought to the attention of the court earlier, through reasonable diligence. LCR 7(h)(1). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). As noted *supra*, the Court denied Plaintiff's motion for Rule 37 sanctions in a short minute order, reasoning that the motion related to discovery violations, but discovery had long been closed, and so sanctions under Rule 37 were unwarranted. (Dkt. No. 417.) Plaintiff's motion for reconsideration explains that the basis of the sanctions motion was not the discovery process itself, but rather a recently-entered stipulation concerning the discovery. (*See* Dkt. No. 418 at 2.)

In that stipulation, the Parties state "The Dialer data was deleted to deprive Barton of the evidence." (Dkt. No. 378 at 3, ¶ 30.) The stipulation is signed by Plaintiff and by counsel for Defendants, Donna Gibson. (*Id.* at 4.) In response to Plaintiff's motion for reconsideration,

1   Defendants assert that they did not *intentionally* destroy any evidence. (Dkt. No. 429 at 2.)
2   They do not dispute however that they failed to preserve the data at issue, due to a change in
3   systems. (*Id.*) Defendants state that Plaintiff wrote ¶ 30 of the stipulation, and Mr. Delfgauw
4   directed counsel to remove it from the final stipulation, but it was not removed. (*Id.*)
5   Defendants submitted declarations in support of their argument, though they do not fully explain
6   what occurred. Defendants' Exhibit A, which is purportedly counsel's notes regarding revisions
7   to the stipulation, shows ¶ 30 as "Crossed out," but Exhibit B, a red-line draft of the stipulation,
8   shows the statement regarding destruction of dialer data (appearing as ¶ 64 in that document) as
9   not being crossed out. (Dkt. Nos. 432-1 at 2; 432-2 at 6.)

10  Under the circumstances, the Court believes that reconsideration is appropriate. The
11  Court erred by not initially appreciating that the basis for the motion was, at least in part, the
12  recently entered stipulation, not events that had concluded two years ago. Further, Rule 37, by
13  its terms, does not impose any deadlines for motions, and "[c]ourts generally treat Rule 37 as
14  operative 'during the discovery process.'" *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712,
15  804 (N.D. Ohio 2024). Here, the stipulation effectively re-upped an issue that had occurred
16  during the discovery process, making it timely once more.

17  Turning to the merits of the motion, the Court believes that this conduct demands
18  sanction. Rule 37(e) provides:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>     **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>     **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 6

      **(A)** presume that the lost information was unfavorable to the party;

      **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or

      **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37.  The intent requirement of Rule 37(e)(2) "is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Gregory v. State of Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024).  Here, Defendants have *stipulated* that they "acted with the intent to deprive another party of the information's use in the litigation" but now seek to walk that back and argue that they merely failed to preserve the information without intent to deprive another party of it.  The Court will not allow Defendants to simply disregard their own unambiguous stipulation by arguing they should be relieved of the consequences of their stipulation because they failed to diligently review it.  The Court ORDERS that, pursuant to Rule 37(e), should this case ever reach a jury trial, the jury will be instructed that it may presume the information Defendants failed to preserve was unfavorable to them.

      Further, the Court is now confronted with a situation where Defendants represent that a stipulation they made to the Court was false, and that merits its own sanction to maintain the integrity of the judicial process.  Regardless of how it occurred, the Court is incredulous how any member of the bar could sign and submit a *stipulation* that their client *purposefully destroyed evidence* to deprive an adversary of it, absent actual knowledge that such an extraordinary event had occurred.  By stating that no such purposeful destruction occurred, Defendants and their Counsel effectively admit making a false representation to the Court.  Even assuming that the misrepresentation is the result of carelessness rather than malicious intent, as Defendants claim,

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 7

the carelessness falls far below the threshold of minimum professional competency and is part of a pattern of insufficient attention to truth or accuracy in Defendants' papers.  As noted *supra*, the Court also ordered Counsel Gibson to show cause why she should not be sanctioned for false and misleading statements in her response to Plaintiff's motion for summary judgment.  In that response, Counsel cited *Barton v. Walmart*, 254 So. 3d 796 (La. Ct. App. 2018) for the proposition that it was "proven previously" that Plaintiff Barton committed fraud, when in fact that case is a state tort case involving a different individual of the same name, having nothing to do with this matter. (*See* Dkt. Nos. 403 at 6; 416 at 11.)[1]  Counsel responded that those errors were an "oversight" and she meant to cite a relevant case in this district, *Barton v. Walmart, Inc*, No. 23-05063.  (*See* Dkt. No. 420 at 2–3).  The Court has decided that this conduct, on its own, does not merit sanction, but this pattern of carelessness by Defendants and their Counsel have greatly extended and delayed resolution of this case.

Therefore, the Court ORDERS Defendant Joe Delfgauw and Counsel Donna Gibson to SHOW CAUSE why they should not be sanctioned under Rule 11, 28 § U.S.C. 1927, or the Court's inherent authority for making false representations to the Court.  Defendants' response to the Order to Show Cause is due <u>fourteen days</u> from this order.

### B. Plaintiff's Motion for Summary Judgment (Dkt. No. 423) Is Stricken, Plaintiff's Motion to Suppress (Dkt. No. 434) is Denied, and the Court Orders Limited Supplemental Discovery as to the Phone Call Recordings.

---

[1] Counsel also cited an order in *Barton v. Leadpoint*, No. C21-5372 BHS 2022 WL 293135 (W.D. Wash. Feb. 1, 2022) for the same proposition of proof of fraud, without noting that the Ninth Circuit had reversed a similar finding of bad faith as to attorneys' fees in that case, *Barton v. LeadPoint, Inc.*, No. 22-35691, 2023 WL 4646103, at *2 (9th Cir. July 20, 2023).  (*See* Dkt. No. 403 at 5–6.)  The Court finds that this was misleading, but not sanctionable.

1    Based on the newly submitted evidence of recordings of some of the phone calls at issue
2 which call into question the veracity of Plaintiff's claim, the Court finds that it cannot rule on
3 Plaintiff's motion for summary judgment (Dkt. No. 423) at this time, and finds that limited
4 additional discovery is needed.
5    As noted *supra*, Defendants submitted these calls not in response to the summary
6 judgment motion, but rather their response to Plaintiff's motion for reconsideration on his motion
7 for sanctions.  (*See* Dkt. No. 429.)  Defendants state that earlier in this litigation, they attempted
8 to find call logs but were informed by their server manager, Ryan Becker, that information was
9 unavailable due to server upgrades.  (*Id.* at 2.)  But more recently, on November 13, 2024, Mr.
10 Delfgauw personally asked Mr. Becker if recordings of the phone calls were available, which are
11 stored in a separate location, and Mr. Becker identified 11 recordings.  (*Id.* at 2–3.)  Defendants
12 have submitted the recordings on the affidavit of Mr. Becker (Dkt. No. 430) as well as
13 declaration from Mr. Delfgauw, who attests from personal knowledge that the voice on the
14 recordings belongs to Plaintiff Barton.  (Dkt. No. 431 at 2.)  Plaintiff acknowledges it is in fact
15 his voice on the recordings by moving to "suppress" them on the grounds that they were
16 recorded without his consent.  (Dkt. No. 434 at 1.)
17    First, the Court notes that these recordings have been produced in an *extremely* untimely
18 fashion, as discovery closed *more than two years ago*, and Defendants apparently possessed this
19 information the entire time.  There is no good reason why, if Defendants were aware that they
20 maintained recordings of phone calls, that they did not search those recordings sooner.[2]

---

[2] Defendants discussed moving for reconsideration of the Court's order granting summary judgment to Plaintiff on their fraud counterclaim during the status hearing on November 26, 2024, but never did so. Such a motion would now be very untimely.  *See* LCR 7(h)(2) (setting 14-day deadline for reconsideration).  Defendants can move for relief from the Court's judgment

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 9

1  Nonetheless, "[g]enerally, a district court must consider all of the evidence before it when
2  deciding a motion for summary judgment." *Miller v. Shaner Hotel Grp. Ltd. P'ship*, 999 F.
3  Supp. 2d 1298, 1302 (S.D. Ga. 2014). Further, the Court will not allow claims or evidence
4  known to be false to be presented to a jury at trial. *See Giglio v. United States*, 405 U.S. 150,
5  153 (1972) ("deliberate deception of a court and jurors by the presentation of known false
6  evidence is incompatible with 'rudimentary demands of justice.'") Additionally, the Court only
7  considers admissible evidence on summary judgment, *see* Fed. R. Civ. Pro. 56(c), but the
8  recordings appear to be offered in admissible form, on the affidavit of a custodian who can
9  testify to the records from personal knowledge. (*See* Dkt. No. 430.) And Plaintiff's out-of-court
10 statements may be excluded from hearsay. *See* Fed. R. Evid. 801(d)(2).

11        Plaintiff offers a "motion to suppress" the call recordings on the grounds that they were
12 recorded without his consent. (Dkt. No. 434.) As an initial matter, the Court does not believe
13 that a "motion to suppress" is appropriate in the context of a civil case, though there may be
14 other procedural mechanisms to preclude use of the recordings at trial. Washington is a two-
15 party consent state; it is unlawful to record a phone call "without first obtaining the consent of all
16 the participants in the communication." Wash. Rev. Code § 9.73.030(1)(a). Phone calls
17 recorded in violation of that rule are inadmissible in courts of general jurisdiction in Washington,
18 i.e. state courts. Wash. Rev. Code. § 9.73.050. The parties have not adequately briefed whether
19 § 9.73.050 applies here, especially where the Court is *not* sitting in diversity jurisdiction. *See*
20 *Brunelle v. PeaceHealth*, No. 3:22-CV-05499-TMC, 2024 WL 4529267, at *9 (W.D. Wash. Oct.

---

under Federal Rule of Civil Procedure 60, but they would have to explain how and why they are entitled to that relief if they could have accessed and produced the recordings prior to the Court's consideration of that motion.

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 10

18, 2024) (casting doubt on applicability of § 9.73.050 in federal court, but deferring the question).

Further, as Plaintiff acknowledges (Dkt. No. 434 at 2), Plaintiff was aware that at least some of the calls were recorded. Some calls contain recording disclaimers at the beginning of the call (Call on 12/8/21 at 3:05 p.m., timestamp 0:27; Call on 12/10/21 at 11:29 a.m., timestamp 0:10) and others have disclaimers mid-way through (Call on 12/8/21 at 2:55 p.m., timestamps 1:14 and 5:07; Call on 12/8/21 at 3:10 p.m., timestamp 1:09, Call on 12/8/21 at 3:13 p.m. at timestamp 1:12). Based on these legal and factual issues, the Court finds that it is premature to rule on whether the calls were consensual, and that issue may be explored in limited discovery. For that reason, Plaintiff's motion to suppress (Dkt. No. 434) is, at this time, DENIED.

On the Court's own review of the recordings, the Court finds that they provide strong evidence to support the claim that Plaintiff Barton was (mis)using the identity of Ivette Martinez or Jimenez, calling into question the veracity of his claim. In the first call, Plaintiff is asked by a telemarketer "your first name is Ivette?," Plaintiff responds "yes," he is then asked "last name sir is Jimenez?" and he responds "yes."[3] (Call on 11/17/21 at 12:34 p.m., timestamp 1:51). In the next call, the telemarketer introduces themselves by asking "Is Ivette available?" and Plaintiff responds, "may I ask who's calling?" (Call on 12/8/21 at 2:55 p.m., timestamp 0:04). On the sixth call, Plaintiff identifies himself as "James" and the telemarketer notes that the records show his name as "Ivette," Plaintiff then gives "Martinez" as his last name. (Call On 12/8/21 at 3:13 p.m., timestamp 0:36). The Court observes that throughout the recordings Plaintiff frequently engages with the telemarketers as they pitch their services, then when pressed for financial information he hangs up. The telemarketers state that they are calling in response to Plaintiff's

---

[3] These are not official transcripts of the calls; no transcripts have been produced.

ORDER ON MISCELANEOUS MOTIONS (DKT. NOS. 418, 419, 423, 434, 456, 458) - 11

request for information, suggesting his consent to the call. (*See e.g.*, Call on 11/17/21 at 12:34 p.m., timestamp 0:10 "looks like you just responded from a text message we sent out to you.") Elsewhere, Plaintiff attempts to pin one of the Defendant entities as the source of the calls. (*See* Call on 12/08/21 at 3:10 p.m., timestamp 2:38, Q: "did you say you're with Xanadu marketing?" A: "no sir.")

There is no TCPA claim as to a call made with the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). Consent must be "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009). Consent needs to be given to the entity doing the calling. *See id.* If Plaintiff consented to these calls he does not have a claim on their basis, regardless of whether he used a false identity—though use of the false identity provides circumstantial evidence to support Defendants' theory that Plaintiff is generating these calls for the purpose of litigation. *See Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012) (granting summary judgment on TCPA and FDCPA claims and ordering plaintiff to show cause under Rule 11, where the record "suggests that plaintiff may have engaged in a game of cat and mouse . . . obscuring his identity so that there was no way the collection company could know with whom it was dealing, all for the purpose of creating this lawsuit.") The Ninth Circuit has also held that Plaintiff does not have a cognizable TCPA claim over a phone number used specifically for litigation because he lacks a privacy interest in the number; it may follow that he does not have a TCPA claim if he was using a false identity for litigation purposes. *See Barton v. LeadPoint, Inc.*, No. 22-35130, 2023 WL 4646103, at *1 (9th Cir. July 20, 2023). The Court notes that the calls for which Defendants have provided recordings are among those Plaintiff claims violated the TCPA and are subjects of his motion for summary judgment, but there are numerous other calls and texts as well. (*See* Dkt. No. 423 at 2.)

As a result of these developments, the Court is convinced that *limited* additional discovery is necessary as to recordings of the calls at issue. Permissible topics within the scope of this limited discovery include: whether recordings of any other calls exist; how Defendants determined these recordings exist—and what knowledge they did or did not have of them earlier in this litigation; Defendants' practices regarding recording calls, informing call recipients that calls are being recorded, and storage and retention policies for those recordings; Plaintiff's use of Ivette Jimenez/Martinez's identity, other pseudonyms, and any steps he took to initiate/opt-in to calls or texts under those names. Plaintiff must have the opportunity to depose Mr. Becker and Mr. Delfgauw regarding these topics, while Defendants must have the opportunity to depose Plaintiff regarding the same.

Accordingly, the Court STRIKES Plaintiff's motion (Dkt. No. 423) and ORDERS limited supplemental discovery consistent with the above instructions. This limited additional discovery is to be complete within <u>90 DAYS</u> of this order.[4] For the same reasons, Plaintiff's motion for sanctions under 28 U.S.C. § 1927 against Defendants for filing the fraud counterclaim (Dkt. No. 419) is STRICKEN.

### C. Plaintiff's Motion Regarding State Court Proceedings (Dkt. No. 456) Is Denied.

Plaintiff has filed "Motion to Dismiss the Same Counterclaim Just Filed In Washington State Superior Court." (Dkt. No. 456.) This motion is DENIED. Generally, under the Anti-Injunction Act federal courts cannot enjoin state court proceedings, absent statutory exceptions. *See* 28 U.S.C. § 2283; *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286

---

[4] The Court will not entertain motions for extension. The Parties are directed to diligently complete this limited discovery.

(1970) (Anti-Injunction Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.") One of those exceptions does allow federal courts to enjoin state courts as needed to "protect or effectuate its judgments," under which "a federal court may enjoin a state court action that is barred by the res judicata effect of the federal court's judgment." 28 U.S.C. § 2283; *Brother Recs., Inc. v. Jardine*, 432 F.3d 939, 943 (9th Cir. 2005). The purpose of this rule is to "prevent the harassment of successful federal litigants through repetitious state litigation." *Brother Recs.,* 432 F.3d at 942–943 (quoting *Amwest Mortgage Corp. v. Grady,* 925 F.2d 1162, 1164 (9th Cir.1991)).

But Plaintiff does not formally ask for an injunction against the state court, rather he asks that this Court order Defendants to dismiss their fraud counterclaim in state court, i.e. the same one they asserted here and that this court granted summary judgment against. (*See* Dkt. No. 456 at 2.) It is *Plaintiff* who initiated the parallel litigation in state court. (*See* Dkt. No. 456-2.) An order compelling Defendants to take some action in state court would need to come in the form of injunctive relief, which is equitable. Even assuming the Court could enjoin Defendants under these circumstances, it would not do so here as Plaintiff has not shown entitlement to that extraordinary remedy. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). That said, nothing prevents Plaintiff from arguing to the state court that relitigation of the counterclaim there is precluded by the judgment on that claim here.

Defendant's motion to strike Plaintiff's motion (Dkt. No. 358) is DENIED as moot, and their motion for sanctions is DENIED.

## IV    CONCLUSION

The Court ORDERS

- Plaintiff's Motion for Reconsideration (Dkt. No. 418) is GRANTED and the Court ORDERS a discovery sanction under Rule 37, the jury will be instructed that it may presume that deleted information was unfavorable to Defendants;

- The Court on its own motion ORDERS Defendant Joe Delfgauw and Counsel Donna Gibson to SHOW CAUSE why they should not be sanctioned under Rule 11, 28 U.S.C. § 1927, or the Court's inherent authority for making false representations to the Court.  Defendants' response to this Order to Show Cause is due <u>14 DAYS</u> from this order.

- Plaintiff's Motion for Summary Judgment (Dkt. No. 423) is STRICKEN, Plaintiff's Motion to Suppress (Dkt. No. 434) is DENIED, Plaintiff's Motion for Sanctions (Dkt. No. 419) is STRICKEN, and the Court ORDERS limited additional discovery regarding the phone call recordings, consistent with this opinion, to be completed within <u>90 DAYS</u> from this Order;

- Plaintiff's Motion to Dismiss Counterclaim Filed in State Court (Dkt. No. 456) is DENIED, Defendants' Motion to Strike and for Sanctions (Dkt. No. 458) is DENIED.

- A status hearing is scheduled for April 10, 2025 at 10:30 a.m. to discuss the status of completion of the limited discovery.

Dated this 13th day of March, 2025.



David G. Estudillo
United States District Judge