Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

NATHEN BARTON,

Plaintiff

v.

JOE DELFGAUW, XANADU
MARKETING INC., STARTER HOME
INVESTING INC, &
JOHN DOE 1-10

Defendant(s).

CASE NO. **3:21-cv-05610-DGE**

MOTION TO RECONSIDER DKT
462

On 4/1/2021, someone used the name Ivette Jimenez to consent to solicitation calls to the 1019 number from a list of "partners". Starter Home and Xanadu called and texted but stipulated none of the texts were from a partner. Dkt 416, 7:15-18. They were served this lawsuit on 9/7/2021 and removed the 1019 number from their calling list the same day. Dkt. 394, 4:7-9 and Dkt. 395, page 29 ¶11. In November and December of 2021, the defendants initiated such a flurry of calls and texts to the 1019 number that I thought they had received a fresh opt in and pushed to discover the facts behind it. See Issue #2 *infra*. At the 5/22/2022 hearing the defendants said there were no facts of a post-April 2021 opt in, and the Court ordered that to be the defendants testimony. I investigated who was behind this flurry of calls, captured on a few "newly" discovered recordings. The recordings have me conversing *with the telemarketers as they pitch their services* to listen for their identity and probing with questions such as *may I ask*

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

*who's calling?* and *did you say you're with Xanadu marketing?*[1]  The Court heard the recordings and has ordered an investigation into my investigation.  I know the Court didn't have all the facts of the 11/17/2021 recording, and the Court focused on the fifth 12/8/2021recording, but overlooking the dialog in the preceding minutes.  This motion gives a fuller picture of the facts and proposes a better, faster, and cheaper alternative to Dkt. 462.

### A better way to resolve the ultimate question of consent

This motion shows that the 11/17/2021 recording and the five 12/8/2021 recordings are not probative of who consented on 4/1/2021, and two better sources of direct evidence exist. First, re-depose Ivette. The parties stipulated in Dkt. 378 ¶2:

> The person who used and controlled the email address *ivettealfredomartinez@gmail.com* is the person who caused the Defendants the injury the Defendants allege in their counter claim.

Second, the defendants withheld evidence about the device that created the opt in.  They said they didn't know its browser name, operating system, and type of computer.  Dkt 412 didn't just address the destruction of the dialer data, it also addressed how during discovery I asked for the browser name, operating system, and type of computer that generated the opt in and they denied having it. Then two years later, stipulated they did have it.  *Id* starting at the bottom of page six.  Just as the deleted dialer data stipulation *re-upped an issue that had occurred during the discovery process, making it timely once more*, Dkt. 378 ¶12 is also timely and Dkt 462 omitted it.  Other than who used and controlled Ivette's *ivettealfredomartinez* email,  this is the most probative evidence in the case,  Doesn't *Giglio* prevent the defendants from hiding this information, then using this lack of information to their benefit at trial?

> During all times relevant to this lawsuit Educationschoolmatching.com collected the type of computer and the operating system of the device that is used to "opt in" on the website.

---

[1] I don't know if the recordings are unedited

NATHEN BARTON
4618 NW 11ᵀᴴ CIR
CAMAS WA 98607

1
2
3
4

**The defendants withheld information in discovery about not having this device information and the reasonable inference is it showed a device I was unlikely to own, thus unfavorable to the defendants.** The Court can and should address this, *Carbajal v. Hayes Mgmt. Servs.*, 4:19-cv-00287-BLW, 20 (D. Idaho Dec. 4, 2023).

5

### Motion For Reconsideration Topics / Outline

6
7

1. Dkt. 462 was premised on *the calls for which Defendants have provided recordings are among those Plaintiff claims violated the TCPA and are subjects of his motion for summary judgment.* <u>This is incorrect.</u>

8

   a. <u>The motion for partial summary judgement excluded: The voice calls</u> and the RCW 80.36.390(2) claims cannot be resolved at summary judgement. Dkt 423, 27:11-12. Dkt. 423 only covered text messages from Starter Home and Xanadu.

9
10
11

   b. [T]he parties stipulated that the opt-in provided consent to text messages only for a "specific list of partners" and that "[n]one of the text messages Starter Home or Xanadu sent to (360) 910 1019 was from this specific list of partners." Dkt. 416, 7:14-18.

12

   c. Consent needs to be given to the entity doing the calling. Dkt. 462, 12:8-9. There is no material dispute, the text messages were sent without consent.

13
14

2. I asked the defendants for the facts of any post-April 2021 opt in, they said there wasn't, and the Court ordered that to be their testimony.

15
16
17

3. The Court heard a telemarketing phone agent say: *looks like you just responded from a text message we sent out to you* and concluded: *The telemarketers state that they are calling in response to Plaintiff's request for information, suggesting his consent to the call* without knowing the facts.

18
19

   a. The defendants texted a solicitation on 11/17/2021 51 minutes before the call with a link to *http://getstartedhere.xyz*. That text message was soliciting for Trust Built Auto Insurance, same as the phone agent in the 11/17/2021 recording.

20
21

   b. The phone agent had no way to know if the recipient saw the text message, or responded to the text message by clicking on it. And how could he know more than his boss? *"there is currently no way for us [t]o confirm[] that information," referring to opt-in identity.* Dkt. 416, 8:14-15.

22

   c. Even if the recipient clicked on the link and looked at *TrustBuiltInsurance.com*. that isn't consent for another call.

23
24

   d. Trust Built Auto Insurance isn't on the list of partners and Trust Built Auto Insurance did not have consent to call which is why they stipulated in Dkt. 378 ¶6 *None of the text messages Starter Home or Xanadu sent to (360) 910 1019 was from this specific*

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

*list of partners.*

4. The call recordings appear to be me, investigating who is calling our house. If we are investigating the investigation, I must be allowed a 30(b)(6) deposition of Xanadu Marketing Inc. and Starter Home Investing Inc. (unless Starter Home Investing Inc. provides a declaration that they were not aware of or involved with the voice calls).

Ryan Becker is the system administrator for Xanadu, Dkt. 430 ¶1, but he and Mr. Delfgauw may not know the complete picture of *what knowledge they did or did not have of [the recordings] earlier in this litigation; Defendants' practices regarding recording calls, informing call recipients that calls are being recorded, and storage and retention policies for those recordings* as well as other relevant topics such as:

   a. How, when, and why did they put the 1019 phone number back into their calling list after they removed it on 9/7/2021.
   b. What did *looks like you just responded from a text message we sent out to you* mean.
   c. How could their phone agents know they were calling in response to *Plaintiff's* request for information when Delfgauw testified there was no way to know that.
   d. What were their policies for identifying themselves as required by the TCPA and RCW 80.36.390, did they follow them, and if they didn't identify themselves as required by TCPA and RCW 80.36.390, why not.
   e. What consent allowed them to call the 1019 phone number 43 days after they counterclaimed me in Dkt. 20.
   f. What entity initiated the calls in the recordings, and on whose behalf where they initiated.
   g. What if any text messages or clicks were received from the 1019 number, what did they say, and when were they received.
   h. Why did they say they didn't collect the device information, then stipulate they did.

5. More on why Ivette should be re-deposed.

**Issue #1:** The motion for partial summary judgement in Dkt. 423 specifically carved out the voice calls and one text message as not resolvable on summary judgment. Dkt 423, 27:11-12. The defendants stipulated that the remaining text messages were sent without consent.

**Issue #2**: This lawsuit was filed on August 23, 2021.  The defendants stipulated to removing the 1019 number from their calling list the day they were served on 9/7/2021.  Dkt.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

394, 4:7-9 and Dkt. 395, page 29 ¶11.  It is undisputed that the defendants did not stop calling the 1019 number through 12/17/2021.

> those texts and calls that are cited and referenced in Docket 252 or in his complaint are stipulated to at this time, as those are the only ones that defendants have been made aware being at issue in this lawsuit. Dkt 443, 3:24-26, stipulating to calling the 1019 number through 12/17/2021.

On 5/22/2022, the Court knew about the late 2021 calls.  Exhibit B is a transcript of about five minutes of the 5/22/2022 hearing.  The defendants said there were no facts of a post-April 2021 opt in, and the Court ordered that to be the defendants' testimony.

**Issue #3**: The Court listened to a recording dated 11/17/2021 that contained: "looks like you just responded from a text message we sent out to you" – and drew the wrong conclusion: *The telemarketers state that they are calling in response to Plaintiff's request for information, suggesting his consent to the call.* The evidence shows it isn't true.

My associated declaration lays out receipt of a text message sent on 11/17/2021 at 8:43am with a link to http://getstartedhere.xyz. *Id* at ¶36.  That text message link opened webpage *TrustBuiltInsurance.com*. *Id* at ¶38.  The Court can see a video of this at ¶40-41.

51 minutes later, a caller at 9:34am [adjusted for pacific time] says he is from Trust Built Auto Insurance, same as the text message was soliciting for.  The *http://getstartedhere.xyz* link does not have a tracking code in it, so the defendants had no way to know if the recipient ever clicked on the link in text message.  In Dkt. 205, Delfgauw showed the Court the history of the 1019 number, and the Court can see there is no activity from 4/30/2021 through November.

The 11/17/2021 caller had no idea when he called 51 minutes after texting if anyone had seen the text message, or clicked on the link. He used puffery to increase the odds I'd be interested in his auto insurance pitch.  How could the caller know more than his boss?  *Their own declaration in opposition to summary judgement confirms that "there is currently no way for us [t]o confirm[] that information," referring to opt-in identity.*  Dkt. 416, 8:14-15.

Even if someone in my house looked at the text message, and even if someone in my house clicked on the link and looked at *TrustBuiltInsurance.com*, and even if the defendants knew it, this is not consent for another call.  A telemarketer can't solicit a phone registered on the NDNCR unless it is *evidenced by a signed, written agreement*.  47 CFR § 64.1200(c)(2)(ii).

Trust Built Auto Insurance isn't on the partners list attached to my associated declaration as Exhibit DEF003.  Barton dec ¶54.  This is why they stipulated in Dkt. 378 ¶6 *None of the text messages Starter Home or Xanadu sent to (360) 910 1019 was from this specific list of partners*.  Trust Built Auto Insurance did not have consent to call.

The Court may feel it isn't fair that I said "yes" when the caller asked "your first name is Ivette" but answering the question "no" ran a high risk of a hang up and going along with a telemarketer to get them to reveal themselves is the best investigative tool.  Congress found the unwanted 11/17/2021 call harmed me.  I had a right to investigate the caller on the line who just harmed me to seek redress for the damages just the same as if they had put a brick through my window, even if the defendants ask if I am "Ivette", "James", or "Jamaal" (Jamaal is addressed in two paragraph down and in Barton dec ¶¶1-3).  The Court says *On the sixth call, Plaintiff identifies himself as "James"* but overlooked that 30 seconds into the first 12/8/2021 recording, the caller addressed me as "James", and then at 6:26 of the first recording, the caller identified me to another phone agent as "James Martinez".  44 seconds into the second 12/8/2021 recording, the caller says "is this James" without waiting for an answer.  In the fourth 12/8/2021 recording, the caller uses a similar tactic as the Trust Built Auto Insurance caller: "I was following up with you today because it looks like a [unintelligible] requested information about rent to own homes . . .".  Near the end of this fourth 12/8/2021 recording I ask if they are Xanadu Marketing and the phone agent denies it.  Xanadu Marketing had the recording so that appears to

1  be a lie.  During all of these recordings I am investigating the entity responsible for the calls.

2  Barton dec. ¶¶5-25.

3      The Court overlooked all these prior events, where they called me James, introduced me

4  to someone else as "James Martinez", and denied they were Xanadu Marketing.  Only after all of

5  this do we get to the sixth recording, transferring me to a new phone agent asking me for my

6  name.  If I didn't give the name they expected after all of that, they'd have hung up.

7      About Jamaal Mason.  The defendants have called the 1019 number asking for Ivette and

8  James, and I am certain they have called it looking for Jamaal Mason.  The first communication I

9  received from the defendants regarding this lawsuit (see Exhibit A) was an email from Edward

10  Winkler sent on September 15, 2021, who the Court might remember attended a hearing in

11  person last year.  His email accused me of *an attempt earlier this year to hide your identity by*

12  *providing a fraudulent name, (Jamaal Mason).*  We'd received calls on the 1019 number asking

13  for a Jamaal prior to this email, and why would they accuse me if they hadn't placed calls to the

14  1019 number asking for Jamaal Mason?  I never found out because they deleted the dialer data.

15      **Issue #5**: Ivette testified to using and controlling the *ivettealfredomartinez* email address.

16  Dkt 388-1 starting at line 24:

17  Q  And so did you have an e-mail under the name Ivette Martinez?
18  A  I have -- I have one work e-mail that was Ivette Martinez Marquez, and then I have a
    joint one with my ex-husband that was Ivette Alfredo Martinez.
19  ⋮
20  Q  Okay. This Ivette Teal -- no, I'm sorry. It's ivettealfredomartinez@gmail.com, do you
    have the user -- well, you have a username. Do you have the password for that account?
    Is that an account that you can check the e-mail?  *Id* at 12:9
21  A  Yes.

22  Q  Okay. Do you know if your ex-husband is currently able to check that e-mail?
23  A  No. That e-mail was made when we were looking for houses. And so that was made for
    us to be able to kind of keep track of everything. And then it just kind of turned into an e-

24

mail. It's not one that I use on a regular basis, but it's one that I'm logged into in case I need to.

But she wasn't questioned about who else had the password to her email because the discovery window closed long before the stipulation in Dkt. 378 ¶2.  In her original deposition Ivette admitted she was nervous about telling me her IP address.  *Id* at 11:9:

Q  Okay. Do you remember that you and I traded some e-mails about a year ago?
A  Yes.
Q  And in one of my last e-mails, I had asked if you would click a link that would tell you what your current or IP address is?
A  Yes.
Q  Did you happen to use your Comcast Internet and click that link and see what your Comcast IP address was?
A  I did not simply because, in all honesty, it just kind of freaked me out a little bit and I --
Q  Were you nervous -- I'm sorry. Keep going.
A  I just never did it. I have run diagnostic tests on my Internet before, but never -- like I didn't click that link.
Q  Were you nervous that maybe your IP address would match the IP address that I talked about?
A  Not necessarily because I think you mentioned something about Salmon Creek, and I live in Hazel Dell. So, to me, that was just a little too close for comfort in a way.

I believe she ran her IP address, and it matched the opt in IP address.  For her own curiosity, wouldn't she have checked just to know for herself?  If the deposition reveals that Ivette is the person exclusively in control of email address *ivettealfredomartinez@gmail.com*, the source of the opt in is found.  Most people don't share their email password, so the deposition is very likely to reveal the source of consent.

**Conclusion**

I don't have the burden of proving consent at trial, the defendants do.  I've made a prima facia showing that I didn't consent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) stands for the proposition that once I've done that, the burden shifts to the defendants must produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial.

NATHEN BARTON
4618 NW 11TH CIR
CAMAS WA 98607

1    The phone recordings capture me investigating the identity of who is illegally calling me.

2    They are more much prejudicial than probative of who asked for the calls, but the stipulation in

3    Dkt. 378 ¶2 isn't:

4        The person who used and controlled the email address
         *ivettealfredomartinez@gmail.com* is the person who caused the
5        Defendants the injury the Defendants allege in their counter claim.

6    and Ivette testified that she has the password to *ivettealfredomartinez@gmail.com*.  I have

7    testified that she and I don't know each other, spend time together, or socialize together.  I've

8    already testified that I don't have this password, have never had this password, have never

9    controlled this email address, and I've only corresponded with Ivette by sending emails to this

10   email address and receiving emails from Ivette at this email address.  Barton Dec. ¶¶55-69.

11       The other probative evidence we should have had was the information about the device

12   used to create the opt in.  The defendants lied in discovery about not having it, then admitted

13   they did, and still didn't disclose it.  It must be unfavorable to them.  Their pattern of deleting

14   and hiding information unfavorable to them is very prejudicial to me.

15

16

17   _____          _____March 16, 2025_____

18            (signed)                                    (Dated)

19   Nathen Barton
     (360) 241 7255
20   4618 NW 11th Cir
     Camas WA 98607
21   FarmersBranch2014@gmail.com

22

23

24

1

2                          I.      CERTIFICATE OF SERVICE

3          I hereby certify that on March 16, 2025, I electronically filed the foregoing with the Clerk

4   of the Court using the Court's CM/ECF System, which will automatically generate a Notice of

5   Electronic Filing to all parties in the case who are registered users of the CM/ECF System, which

6   includes the Defendant.  The said Notice of Electronic Filing specifically identifies recipients of

7   electronic notice.

8          /s/ Nathen Barton

9          Nathen Barton

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24