Honorable David G. Estudillo

# UNITED STATES DISTRICT COURT
# IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHEN BARTON,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JOE DELFGAUW, XANADU MARKETING INC., STARTER HOME INVESTING INC., & JOHN DOE 1-10<br>　　　　Defendants. | Case No. 3:21-cv-05610-DGE<br><br>DEFENDANTS JOE DELFGAUW, XANADU MARKETING INC., RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR SUMMARY DISPOSITION<br><br>NOTE ON MOTION CALENDAR:<br>August 11, 2025 |

Defendants Response to Plaintiff's Renewed Motion for Partial Summary Disposition
3:21-cv-05610-DGE  –

1

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

I.     INTRODUCTION

Defendants Joseph Delfgauw, Xanadu Marketing, Inc., and Starter Home Investing Inc. (collectively, "Defendants") respectfully request that the Court dismiss Plaintiff Nathen Barton's ("Plaintiff") case with prejudice. As Defendants have argued in their Motion for Summary Disposition, Plaintiff's case is a poster child for Telephone Communication Protection Act ("TCPA") litigation abuse.

Plaintiff alleges that he received a text message on April 1, 2021, that states "**You just filled out** our Rent to Own or Home Buyer form! Let's get you Approved! **Start here** http://buyzerodowns.com". The text message had instructions to get approved. Instead of Plaintiff texting "STOP" or ignoring the text, Plaintiff clicked on the link in the text message, which he alleges took him to a website that identified Starter Home Investing Inc. Once Plaintiff got to the website, he "answered questions", submitted information (including his phone number, which he has never disputed or explained), and agreed to more text messages and calls in order to generate statutory damages. After he "answered questions" on the website, Plaintiff began receiving more text messages and calls (that the website informed him he would receive in its TCPA consent disclosure). Those calls now form the basis of Plaintiff's frivolous lawsuit. Notably, Plaintiff does not allege the contents of the calls, does not allege asking anyone on a telephone call to stop calling, and does not allege responding to any text messages with "STOP".

In light of Plaintiff's own allegation, Plaintiff's case should be dismissed with prejudice because he **consented** to the calls and text messages about which he now complains. Had Plaintiff stopped there, he would not have "more than one telephone call." *See 47* U.S.C. § 227(c)(5). Plaintiff's TCPA claim should be dismissed because he created an Established Business Relationship by "answer[ing] questions" on the website from the text message. Additionally, Plaintiff answered the calls and [mis]identified himself and encouraged the conversation with the phone agent.

Further, Plaintiff cannot state a claim because his claim requires calls to a "residential" telephone number. Plaintiff does not include any facts explaining why the telephone number at issue 360-xxx-1019 ("1019"), which he routinely uses in Court pleadings and dockets, qualifies as a "residential" telephone. Instead, he states that the phone was purchased for his 11-year-old "son" that he has used in filing at least (5) five lawsuits in Federal Court. Plaintiff also routinely uses the

Defendants Response to Plaintiff's
Renewed Motion for Partial Summary
Disposition
3:21-cv-05610-DGE –

2

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

number (718-710-5784) in TCPA lawsuits, in which in one case he uses the 718-telephone number for "judicial branch advocacy" (i.e. for frivolous litigation) and "to shield his 972-area code number" (a separate number that he describes as his "personal cell phone").

## II.    PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on August 23, 2021, in this Court alleging violations of "Federal and Washington State Law." DKT 1.   Four months later, Plaintiff filed his first amended complaint.  After two complaints, numerous motions, and four years later, Plaintiff contends that he never consented to any call or text messages from Defendants and therefore Defendants violated the TCPA and Washington Telephone Solicitation Act (WTS).   TCPA, codified at 47 U.S.C. § 227, consists of two primary prohibitions, contained within § 227(b) and § 227(c), respectfully§ 227(b) prohibits certain uses of "automated telephone equipment," and § 227(c) authorizes the Federal Communications Commission ("FCC") to promulgate rules relating to "industry-based or company specific 'do not call' systems." 47 U.S.C. § 227(c)(1)(a).   Plaintiff's lawsuit is brought exclusively under § 227(c).   This claim requires more than one call – had Plaintiff not agreed to receive more calls after the initial call or text, he would not have additional calls he contends form the basis of his claim.

## III.    DISMISSAL WITH PREJUDICE IS WARRANTED

### 1.    Plaintiff text messaging claims fail under TCPA

Plaintiff raises claims relating to text messages under TCPA codified at 47 U.S.C. § 227(c), and 47 U.S.C. § 227(d).  "While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that § 227(c)(5) of the TCPA includes "telephone call" and does not mention text messages or SMS messages, and nowhere does the TCPA define "telephone call" to include text and/or SMS messages." *Jones, et al. v. Blacksone,* 2025 WL2042764 (C.D. Ill. July 21, 2025).  The court dismissed Plaintiffs' TCPA claims as the text messages are not a included in the TCPA.

Plaintiff contends that his claims should survive, under 47 U.S.C § 64.1200.  § 64.1200(c)(2) placed restrictions on calls that utilize artificial or prerecorded.  § 227(c)'s implementing regulation, 47 C.F.R. § 64.1200(c), provides in relevant part:

> No person or entity shall initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the

Defendants Response to Plaintiff's
Renewed Motion for Partial Summary
Disposition
3:21-cv-05610-DGE   –                               3

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

> national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

47 C.F.R § 64.1200(c)(2).   The requirement does not concern calls made by live agents.[1]  Defendants do not utilize artificial or prerecorded messages.  All calls are from live agents.

Furthermore, "Section 64.1200(c)(2) provides for exemptions relieving the caller of liability for calling a subscriber on the Do-Not-Call Registry," including the "business relationship" exception ("EBR"). *Forney v. Hair Club For Men Ltd.*, No. 16-cv-9640-R, 2017 U.S. Dist. LEXIS 214251, *6 (C.D. Cal. June 26, 2017). The term established business relationship means:

> a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on **the basis of the subscriber's inquiry or application** regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R § 64.1200(f)(5) (emphasis added). Plaintiff, at the very least, made an "inquiry or application" when he "answer[ed] the questions" on Xanaduetracking.com or xanaduemarketing.outgrow.com (FAC at 5:8 and 11:6-10) within the 3 months preceding the alleged calls and text messages.[2]

As the *Johansen* court (discussed above) noted, plaintiff's "deceptive conduct gave [defendant] an objectively reasonable basis for believing that he had established a business relationship . . . ." *Johansen*, 2017 U.S. Dist. LEXIS 208878 at *8-*11. Following the plaintiff's response to the order to show cause, the court held that plaintiff's claim "fail[ed] as a matter of law" as a result of the EBR plaintiff created when he feigned interest and completed the enrollment process. *Johansen*, 2018 U.S. Dist. LEXIS 138785 at *13; *see also Copart*, 2016

---

[1] In December 2020, the FCC issued guidance regulating the artificial or prerecorded voice calls (also known as robocalls) made to residential phone lines, previously exempt from the Telephone Consumer Protection Act (TCPA). Specifically, the regulations set out requirements to ensure that the calls satisfy the Telephone Robocall Abuse Criminal Enforcement and Deterrence (TRACED) Act's requirements to identify who can call, who can be called, and any call limits. The FCC's regulations now include limitations on the number of calls that a caller can make within a specified time frame, requirements of specific opt-out mechanisms in every call for future calls, and requirements to implement Do Not Call procedures. On January 2023, the FCC announced the effective date of the new rules as six months from the final publishing date, making it July 20, 2023.

[2] The alleged calls from Xanadu and Starter Homes occurred between April 1, 2021 and July 13, 2021

Defendants Response to Plaintiff's
Renewed Motion for Partial Summary
Disposition                                          4
3:21-cv-05610-DGE   –

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

U.S. Dist. LEXIS 155755 at *33 ("Plaintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship and for the stated purpose of that relationship – to effectuate Plaintiff's donation of a car."); *Cubbage v. Talbots, Inc.*, No. C09-911BHS, 2010 U.S. Dist. LEXIS 68076, *8 (W.D. Wash. July 7, 2010) ("Mitchell purchased at least one product at a Talbots store within the eighteen months prior to April of 2009, the date of the call. Therefore, Mitchell and Talbots had an established business relationship.").

The plaintiff affirmatively invited Defendants to call him when he clicked on each text message and established a business relationship.

### 2. The Plaintiff opted in and consented to receive text messages and telephone contact

Plaintiff is a serial TCPA litigant who repeatedly files lawsuits. A PACER search suggests he has filed numerous TCPA case with different Defendants prior to and after filing the instant case.[3] In this case, on or about April 1, 2021, Plaintiff or his designee visited https://renttoownhomefinder.com and gave prior express consent to call his number, 1019. In reliance on such content, Defendants contacted Plaintiff.

The contact information provided by Plaintiff or his alter ego or his designee on the https://renttoownhomefinderhomefinder.com website included the name "I,J-M,"[4] but the phone number provided was unmistakably plaintiff's 1019 phone number in order to purposefully and intentionally receive these "unwanted" phone calls.[5] The IP address associated with the website opt-in is tied to an internet connected device in Camas WA.[6] Just a block from Plaintiff's residence.

On information and belief, the only person who benefited from the phone calls at issue was Plaintiff himself. Defendants believe Plaintiff, his alter ego, or his designee provided the information so that Plaintiff would receive calls so that he could claim the calls unwanted, even though no other person would benefit. The form on https://renttoownhomefinder.com also included a click-box to establish the user's consent to receive phone calls and/or text messages to Plaintiff's 1019 phone

---

[3] Exhibit B: Pacer
[4] Defendants refer to I.J-M. by her initials to protect her privacy.
[5] Dates and Information for Opt-in (DKT 496-4)
[6] Decl of Edward Winkler (DKT 104)

Defendants Response to Plaintiff's
Renewed Motion for Partial Summary
Disposition                              5
3:21-cv-05610-DGE  –

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

number. After receiving prior consent to call Plaintiff's phone number, Plaintiff began receiving calls on or about April 1, 2021.

**3.   Defendants agree that they do not know who the phone agents are calling.**

Defendants still admit they do not know who the phone agents are calling. Defendants are confused by this argument. Nothing in the TCPA requires Defendants to know who the phone agents call, only that they call a person that filled out a webform on Defendants website and it has a TCPA disclaimer on it. In this case, Plaintiff filled out a webform on the Defendants webpage that had a TCPA disclaimer. Plaintiff, being a self-proclaimed TCPA serial litigant should know this is not an argument.

**4.   Defendants do not know what other entities' phone agents said to Plaintiff.**

Defendants still admit they do not know what was said by the same callers from other entities or to other individuals to Plaintiff. Again, Defendants are confused by this argument. Nothing in the TCPA requires Defendants to have recordings from other entities to Plaintiff. Defendants have given Plaintiff all the recordings that are between their phone agents and Plaintiff.[7]

**5.   Defendants admit their phone agents are trained pursuant to TCPA requirements.**

At Defendant, Joseph Delfgauw's deposition, Plaintiff questioned how the phone agents were trained if they did not reach the person that had filled out the webform. Defendant testified "They are trained to politely say, I apologize for calling, if the person on the phone identifies themselves as someone other than the person who fills out the form.",[8] and then would hang up.

**6.   Defendant would not have knowledge of conversations with other entities agents**

Defendants are again confused about what Plaintiff's argument is in this paragraph. Defendants have all the recordings between their phone agents and Plaintiff. Defendants do not know the conversation between Plaintiff and other entities' phone agents. By looking at PACER and all Plaintiff's TCPA suits, Defendants are positive that Plaintiff [mis]represented himself and encouraged the conversations to other entities on those phone calls too.

Plaintiff employs several strategies with the hope of baiting companies into violating the TCPA. Some common "honey pot" methods include: (1) owning multiple phones numbers; (2) providing false

---

[7] Exhibit A: Recordings (DKT 496-3 was missing a page of recordings).
[8] Delfgauw Dep Tr. (Dkt 483-3) starting at 40:19-25

Defendants Response to Plaintiff's
Renewed Motion for Partial Summary
Disposition
3:21-cv-05610-DGE  –

6

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

information when signing up on a website; and (3) having friends and family in different states sign up on sites on their behalf. Defendants do not have proof of #3, but if he didn't fill out the webform on Defendants website then it is believed that a friend or family member did it for him.

7. **When the Plaintiff investigated, he consented to the call.**

After Defendants received prior consent to call Plaintiff's phone number, Plaintiff began receiving calls on April 2, 2021. Plaintiff would pretend to be interested in certain products and services, thereby driving up the call count that he would use to extract a higher settlement payout for his manufactured TCP claim. Further, Plaintiff would falsely identify himself as "I,J-M" to the agent. The same name that was identified on the opt-in form. The plaintiff therefore knew, before filing this suit on August 23, 2021, that he had opted-in to receive phone calls to his 1019 number, the very same phone calls that serve as the basis of his complaint against other Defendants.[9] Defendants believe Plaintiff knew that he opted in to receive phone calls and text messages, and Defendants would rely on that TCPA-compliant opt-in to place calls and text messages to his phone number. Plaintiff intentionally failed to simply ask to stop the phone calls he was receiving in order to drive up his perceived case value and then filed suit falsely claiming that the phone calls were unsolicited in his broader campaign to collect money under false pretenses via his TCPA claims.

Defendants reasonably relied on the fact that the user of phone number 1019 had consented to receive phone calls, and that Plaintiff continued to want to receive callbacks by continuing to act interested. Plaintiff took actions based on Plaintiff's consent and fake continued interest including incurring costs for employee time, telemarketing services, obtaining leads and resources. In addition, Defendants have been required to engage attorneys and incur costs associated with defending against Plaintiff's spurious and fraudulently induced lawsuit-all based on its reasonable reliance of Plaintiff's consent to receive phone calls.

8. **There is a correlation between the clicks on the text messages and subsequent phone calls.**

Defendants did not delete anything regarding this case. Defendants have never had the text messages that Plaintiff received from them. Defendants' software does not store any sent text

---

[9] Barton v. JMS Associate Marketing, 3:21-cv-05509; Barton v. Delfgauw, 3:21-cv-05610; Barton v. America's Lift Chairs, LLC, 3:21-cv-05850; Barton v. Walmart, 3:23-cv-05063; Barton v. Serve All Help All.

messages to anyone. TCPA requires Defendant to only store phone recordings (for five years).[10] What Defendant has is an excel form that shows when someone fills out a webform with name, phone number, and email address. This also shows their IP address. In all cases, it shows that the first webform was filled out on April 1, 2021. The plaintiff alleges that the first text came through on April 1, 2021. FAC at 4:11. The Plaintiff clicked on the April 1, 2021 text message that encouraged the April 2, 2021 phone call from Defendants.

### 9. Defendant did not provide false testimony to the Court

Still not sure what Plaintiff is arguing. Renttoownhomefinderhomefinder.com and Educatonschoolmatching.com are both owned by Xanadu and Starter Homes. It's interesting that Plaintiff states that Defendants are trying to avoid another lawsuit by lying. Plaintiff does not mention that when discovery closed in this case, Plaintiff hastily ran to Washington State court and filed a complaint against the same Defendants on the same allegations. This allowed Plaintiff to continue discovery and has placed undue burden and expense on Defendants.

### 10. Plaintiff is the only party that is trying to manipulate the TCPA with fraud.

Defendants supplied the answer to Interrogatory NO. 18 from discovery in the Washington State case. The plaintiff's complaint only alleges TCPA violations from April 1, 2021, through August 4, 2021. Defendant is not committing fraud by stating that he placed the phone number 1019 on their personal do-not-all list on September 13, 2021. Defendants stated that he was unsure of date that it was when he was served. Defendant Joseph Delfgauw, does not personally place the 1019 number on their personal do-not-call list, they have an employee that does this job. Defendants contacted his employee to place Plaintiff's number on their do-not-call registry. Defendants report shows that Plaintiff's phone number was placed do-not-call registry on September 13, 2021.

### 11. Defendants did not provide false testimony in Washington State Court

Mr. Delfgauw represented himself at a Washington State Court hearing. He told the judge that he was personally served at his home. When the judge questioned him, Mr. Delfgauw stated that the process server handed the documents to his wife. Mr. Delfgauw was telling the judge that the resident agent was not served. Plaintiff is grasping for anything that can help him not get this case dismissed.

---

[10] Exhibit A: Recordings (DKT 496-3 was missing a page of recordings).

**12.  Defendants have evidence that Plaintiff consented to the calls**

Defendants agree that "I,J-M" testified that she owns the email address ivettealfredomartinez@gmail.com. "I,JM" also testified that she did not fill out the webform.[11] The Plaintiff has demonstrated through all his TCPA cases that he has knowledge that when a webform is filled out the company will start sending text messages and phone calls to the phone number. What is interesting is that Plaintiff has filed 5 (five) lawsuits using the phone number 1019, and has used the name "I,J-M" in at least one other case. In this case, not once has he typed "STOP" or requested the phone agent to not call him.   He continued to consent to text messages and phone calls to increase his damages.

**13.  The Plaintiff has scammed Defendants and others**

Defendants do not understand Plaintiffs argument in section 13.  Defendants admit that those are text messages sent to Plaintiff.

Plaintiff alleges that when he received these text messages he would click on them until he found the owners of the text. Even though there is no rule prohibiting Plaintiff from investigating and being a serial litigant, the Federal Court has dismissed cases filed by serial TCPA plaintiff. Specifically, because he repeatedly brings TCPA cases- with the judges finding that no harm was suffered by Plaintiff and that he deliberately received unsolicited calls or texts.

The TCPA is an easy statute for Plaintiff to sue under, but that still does not absolve Plaintiff of his obligations under the Federal Rules to make allegations based on real facts. Perhaps emboldened by easy pay-days, and favorable court rulings, Plaintiff may feel he has a license to engage in the aggressive tactics. This court should dismiss this case with prejudice and sanction Plaintiff for his behavior.

---

[11] Delfgauw Dep Tr. (Dkt 483-3) starting at 40:19-25

Defendants Response to Plaintiff's Renewed Motion for Partial Summary Disposition
3:21-cv-05610-DGE  –                                    9

LAW OFFICE OF DAWN R. VAN DUSEN
2715 AIRPORT ROAD
ADRIAN, MI  49221

## IV. CONCLUSION

For all the reasons, the Court should grant Defendants Motion for Summary Disposition to dismiss Plaintiff's claims and award any other relief deemed necessary and just under the circumstances.

Dated: July 11, 2025

                    ___Dawn R. Van Dusen_____
                    Dawn R. Van Dusen, MSBA #P69647
                    Attorney for Defendants
                    JOE DELFGAUW, STARTER HOME INVESTING, INC. and XANADU MARKETING INC
                    2715 Airport Road
                    Adrian, MI 49221
                    dawnv@apello.net

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system and sent a copy to Nathan Plaintiff as follows:

Nathan Plaintiff by email at farmersbranch2014@gmail.com

Executed on July 14, 2025 at Adrian, Michigan.

                    ___Dawn R. Van Dusen_____
                    Dawn R. Van Dusen, MSBA #P69647