UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON,<br><br>Plaintiff,<br>v.<br><br>JOE DELFGAUW et al.,<br><br>Defendants. | CASE NO. 3:21-cv-05610-DGE<br><br>ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) |

INTRODUCTION

This Telephone Consumer Protection Act ("TCPA") case, four years in the running, has taken many twists and turns. Previously, when Defendants belatedly disclosed call recordings that called into question some of the central tenets of Plaintiff's case, the Court ordered limited additional discovery. Ultimately, the Court finds that the facts developed in that period do not change the outcome of this case. Rather, Defendants have stipulated their case away by stipulating and admitting lack of consent on Plaintiff's part—and they have made no effort to extricate themselves from those stipulations. That compels the outcome. For that reason, the

1  Court GRANTS Plaintiff's Partial Motion for Summary Judgment (Dkt. No. 497), and except as

2  to one state law claim, DENIES Defendant's Motion for Summary Judgment. (Dkt. No. 495.)

3  PROCEDURAL HISTORY AND RELEVANT FACTS

4  The Court extensively detailed the long procedural history of this case in two prior orders

5  (Dkt. Nos. 416, 462) but will summarize the most relevant developments here. Previously, in

6  preparation for trial, the Parties submitted a joint stipulation of facts, which has been the source

7  of numerous problems. As relevant here, those stipulations included the following:

8    ¶6: The language the Defendants' claim Barton agreed to on
9    *educationschoolmatching.com* by checking a box and clicking submit said entering in a phone number or email address on the website was only consenting to receive messages from a specific list of partners. None of the text messages Starter Home or Xanadu sent to
10   (360) 910 1019 was from this specific list of partners.

11   ¶7 Before Starter Home Investing Inc sent the seven text messages to (360) 910-1019 on April 1, 2021, advertising goods or services from Degree Locate, Get Hope To Own,
12   credit-score-first.com, yourent2own.com, Lawsuit Winning, Lions Gate Loans, Honest Loans, and Classes & Careers, entities Degree Locate, Get Hope To Own, credit-score-
13   first.com, yourent2own.com, Lawsuit Winning, Lions Gate Loans, Honest Loans, and Classes & Careers, Starter Home Investing Inc. and Xanadu Marketing Inc. did not have
14   the invitation or consent from Barton to do so.

15  (Dkt. No. 378 at 2–3.)

16  Largely on the basis of the stipulation, the Court granted summary judgment against

17  Defendants on their common law fraud counterclaim, holding that "[i]n light of these stipulated

18  facts and the lack of other supporting evidence, it will be impossible for

19  Defendants/Counterclaimants to carry their burden by 'clear, cogent, and convincing evidence'

20  on all nine elements of fraud." (Dkt. No. 416 at 7.) Defendants' theory of fraud was that

21  Plaintiff was using the name Ivette Marquez/Jimenez to generate opt-ins and create TCPA claims

22  under false pretenses, but the Court held that Defendants' evidence was insufficient to go to trial.

23  (*Id.* at 8–11.). Specifically, Defendants had produced a spreadsheet of opt-ins in Ivette Jimenez's

24

name, and a publicly-sourced IP address geolocation purporting to show that the opt-ins came from Camas, Washington, where Plaintiff lives, but the Court held that Defendants failed to produce this evidence in admissible form, explain its significance, or tie the opt-ins to Plaintiff. (*Id.* at 10.)

Plaintiff also moved for sanctions as a result of Defendants' stipulation that "[t]he Dialer data was deleted to deprive Barton of the evidence," which the Court ultimately granted. (*See* Dkt. No. 462 at 3, 5–7.) In response to that motion, Defendants, for the first time, produced recordings of phone calls in which Plaintiff responded affirmatively when asked if he was Ivette (or another pseudonym, James) in conversations with Defendants' agents. (Dkt. No. 431-1.) Plaintiff has since acknowledged that it is his voice on the recordings and has called his use of Ivette's name an "investigation." (*See* Dkt. No. 434 at 2; 463 at 1–2.) In response to these developments, the Court ordered limited additional discovery, which the Court stated was to focus on:

> whether recordings of any other calls exist; how Defendants determined these recordings exist—and what knowledge they did or did not have of them earlier in this litigation; Defendants' practices regarding recording calls, informing call recipients that calls are being recorded, and storage and retention policies for those recordings; Plaintiff's use of Ivette Jimenez/Martinez's identity, other pseudonyms, and any steps he took to initiate/opt-in to calls or texts under those names.

(Dkt. No. 462 at 13.) At the Court's direction, the Parties have submitted renewed summary judgment motions following the close of that supplemental discovery. Defendants move for summary judgment on Plaintiff's case in its entirety. (Dkt. No. 495.) Plaintiff moves for partial summary judgment (Dkt. No. 497)—it appears he is moving for summary judgment on his federal claims but acknowledging that some state claims and damages may remain for trial. (*See* Dkt. No. 423 at 27.) The Court now turns to the motions.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

DISCUSSION

**1. TCPA Claims, 47 U.S.C. § 227(c) and 47 C.F.R § 64.1200(c)(2)**

Plaintiff brings his claim under 47 U.S.C. § 227(c), which provides authority for regulations to create the Do Not Call Registry ("DNCR"), and § 227(c)(5), which creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" Plaintiff states that his number had been on the DNCR for more than 31 days before April 1, 2021. (Dkt. No. 83 at 4.) Plaintiff alleges violations of § 227(c)(5) and its implementing regulations, 47 C.F.R § 64.1200 for "calling or texting Plaintiff's cellular telephone number without invitation or consent" and § 64.1200(d)(4) for failing to identify the caller. (*Id.* at 16.) His subsequent summary judgment motion clarifies that he is referencing § 64.1200(c)(2). (*See* Dkt. No. 423 at 24.)[1] That section prohibits "telephone solicitation" to residential numbers on the DNCR, and allows a grace period if the called number was on the registry less than 31 days. § 64.1200(c)(2)(i)(D). The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or

---

[1] In response to Plaintiff's motion, Defendants argue that there is no liability for text messages at all under § 227(c)(5), only phone calls, relying on *Jones, et al. v. Blacksone*, 2025 WL2042764 (C.D. Ill. July 21, 2025). (Dkt. No. 504 at 3.) This argument is foreclosed by Ninth Circuit precedent. "Reviewing this issue, we hold that a text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Though *Satterfield's* analysis employed *Chevron* deference, which is no longer operative, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 377 (2024), *Satterfield* remains law of the circuit and is not clearly "irreconcilable" with higher authority. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). *See Wilson v. Skopos Fin.*, LLC, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025) (continuing to apply *Satterfield* and holding that text messages are actionable under § 227(c)(5)).

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 5

rental of, or investment in, property, goods, or services, which is transmitted to any person" but excludes calls or messages "[t]o any person with that person's prior express invitation or permission" or to a person with an "established business relationship" to the caller. § 64.1200(f)(1).

### A. Use of an ATDS Is Not Relevant For These Claims

Defendants' first argument in support of summary judgment is that Plaintiff failed to allege that Defendant used an "automated telephone dialing system [ATDS]." (Dkt. No. at 13.) But this argument is misplaced, because use of an ATDS is an element of § 227(b) (which makes unwanted calls using an ATDS unlawful), but not § 227(c) (which provides authority for implementing regulations and penalties for violations). Plaintiff only alleges a violation of § 227(c), not § 227(b). (Dkt. No. 83 at 4.) Likewise, § 64.1200(c)(2) makes no reference to ATDS, whereas other portions of the regulation do so, *see e.g.*, § 64.1200(a)(1). Thus, failure to allege use of an ATDS is not fatal to the particular claims Plaintiff has alleged.[2]

### B. Defendants Established Consent Through their Stipulations

Next, Defendants argue that they are entitled to summary judgment because Plaintiff consented to the calls or texts. (Dkt. No. 495 at 14.) Plaintiff argues that consent is established by the stipulations and other evidence. (Dkt. No. 497 at 3.) Ultimately, the Court concludes that the stipulations dictate the outcome.

---

[2] Likewise, Defendants argue that Plaintiff's claim under § 64.1200(c)(2) cannot go forward because they used live agents, not artificial or pre-recorded calls. (Dkt. No. 504 at 3–4.) The text of § 64.1200(c)(2) does not differentiate between live vs. artificial/pre-recorded calls, and Defendants do not cite any binding authority to the contrary.

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 6

1    The theory of Defendants' case is that Plaintiff submitted opt-ins to phone calls and texts, but the sum total of their stipulations neuters their current arguments. As noted *supra*, the Parties stipulated as follows:

> ¶6: "The language the Defendants' claim Barton agreed to on *educationschoolmatching.com* by checking a box and clicking submit said entering in a phone number or email address on the website was only consenting to receive messages from a specific list of partners. None of the text messages Starter Home or Xanadu sent to (360) 910 1019 was from this specific list of partners."

(Dkt. No. 378 at 2.) What does that mean? Defendants claim that Plaintiff consented to calls by opting-into them, but Defendants already stipulated Plaintiff did not consent to receiving their calls. This is because Defendants claim the alleged opt-ins would have come through a web form on a specific site they controlled (educationonschoolmatching.com), but that site would *not* have covered calls from Defendant entities because they are not included in the specific list of partners. That means Defendants Starter Home and Xanadu never had consent to call. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d at 955 (holding that consent was invalid as to non-affiliate entities because "[c]onsent [must be] clearly and unmistakably stated"); *see also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1221 (9th Cir. 2022) ("providing a phone number in itself [does not mean] that the consumer has expressly consented to contact for any purpose whatsoever.").

But what if Plaintiff opt-ed in from a different website? Here again, Defendants have put themselves in a bind, as Plaintiff argues. (Dkt. No. 497 at 12.) Defendants previously responded to a request for admission, "Admit or deny that the only 'opt ins' you allege Barton to have committed that caused you injury occurred on the website educationonschoolmatching.com" by answering, "Admitted that at this time it has been determined that Plaintiff opted into marketing campaigns through website educationschoolmatching.com." (Dkt. No. 258-7 at 28.) As a result,

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 7

this Court (Creatura, J.) previously struck Defendants' allegations that Plaintiff opted-in via the website renttoownhomefinder.com, because "Plaintiff provides an admission from defendants that plaintiff *only* opted in from educationschoolmatching.com.  There is no evidence that defendants ever amended their answer."  (Dkt. No. 276 at 4) (internal citation omitted, emphasis in original).  That is the same exact allegation Defendants advance now, that Plaintiff opted in via renttoownhomefinder.com.  (Dkt. No. 495 at 9; 504 at 5.)  But Judge Creatura's ruling is law of the case.  *Ingle v. Cir. City*, 408 F.3d 592, 594 (9th Cir. 2005) ("a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.").

        Moreover, the Parties also stipulated that

> ¶7 Before Starter Home Investing Inc sent the seven text messages to (360) 910-1019 on April 1, 2021, advertising goods or services from Degree Locate, Get Hope To Own, credit-score-first.com, yourent2own.com, Lawsuit Winning, Lions Gate Loans, Honest Loans, and Classes & Careers, entities Degree Locate, Get Hope To Own, credit-score-first.com, yourent2own.com, Lawsuit Winning, Lions Gate Loans, Honest Loans, and Classes & Careers, Starter Home Investing Inc. and Xanadu Marketing Inc. did not have the invitation or consent from Barton to do so.

(Dkt. No. 378 at 2.)  In submitting this stipulation, Defendants conceded liability as to the seven text messages sent to Plaintiff on April 1, 2021.  This is particularly noteworthy given that Defendants' theory of events is that after receiving text messages, Plaintiff clicked on links embedded in them and through that process consented to further calls/texts.  (Dkt. No. 504 at 2, 5.)  Assuming that is true, it could have established consent to subsequent messages, but not as to the first messages on April 1 themselves.

        To review: Defendants have stipulated that Plaintiff *only* opted-in from educationschoolmatching.com and have also stipulated that any opt-in from that website would not establish consent as to their text messages.  So as to their theory that Plaintiff "opted in and

consented to receive text messages and telephone contact" by visiting rentoownhomefinder.com (Dkt. No. 504 at 5), they have no triable case.

Is it fair to hold the Parties to their stipulations of fact? That is how civil litigation works in the ordinary course. As the Court previously indicated, stipulations of fact are binding. (Dkt. No. 416 at 6) (quoting *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 676 (2010)). Moreover, "the facts to which a party has stipulated remain binding on that party throughout the various phases of the same case." *In re Jun Ho Yang*, 698 F. App'x 374 (9th Cir. 2017). There are rare cases where courts have held otherwise. The Ninth Circuit has stated that "[a] stipulation will generally be enforced unless manifest injustice would result." *Lamanna v. Comm'r*, 107 F. App'x 723, 724 (9th Cir. 2004) (quoting *Bail Bonds by Marvin Nelson, Inc. v. Comm'r of Internal Revenue,* 820 F.2d 1543, 1549 (9th Cir. 1987)). Other courts have held that a fact stipulation may be disregarded where "the evidence contrary to the stipulation was substantial." *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1087 (5th Cir. 1996). But Defendants to this point have not advanced any of those arguments, despite the Court having already issued two orders in reliance on the stipulations. (Dkt. Nos. 416, 462.) Even assuming that the stipulation is highly damaging to Defendants only because of their counsel's failure to diligently review it, this Court has already indicated that "[t]he Court will not allow Defendants to simply disregard their own unambiguous stipulation by arguing they should be relieved of the consequences of their stipulation because they failed to diligently review it." (Dkt. No. 462 at 7.) So too again here.

Finally, the Court notes that Plaintiff's potential recovery is limited only to those calls or texts listed in the Amended Complaint. The calls and texts in the Amended Complaint—while poorly organized—appear to be as follows:

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 9

| Date | Text/Call |
|---|---|
| April 1, 2021 | Text (7x) |
| April 2, 2021 | Text |
| April 2, 2021 | Call |
| April 5, 2021 | Text |
| April 5, 2021 | Call |
| April 8, 2021 | Text |
| April 9, 2021 | Text |
| April 12, 2021 | Text |
| April 13, 2021 | Call (2x) |
| April 20, 2021 | Call |
| April 30, 2021 | Call |
| June 11, 2021 | Text |
| July 13, 2021 | Text |
| August 4, 2021 | Text |

(*See generally*, Dkt. No. 83.)  The Amended Complaint was filed on December 31, 2021, and has not been further amended since that time.[3]  In Plaintiff's previous motion for summary judgment, which he now incorporates by reference (*see* Dkt. Nos. 423; 497) he attempted to include calls

---

[3] The Court will not entertain a motion for leave to amend the complaint at this very late stage of the litigation.  *See Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (in denying leave to amend a complaint, a court may consider "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.").

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 10

and texts not pled in the complaint, including from December 2021, and stretching all the way into 2024.  (*See* Dkt. No. 423 at 9–12.)  But the Court is not going to consider allegations on summary judgment not pled in the complaint.  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings"); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968–969 (9th Cir. 2006) (affirming district court's holding that allegations raised on summary judgment and not pled in complaint did not comply with Federal Rule of Civil Procedure 8).  Therefore, recovery is limited to calls and texts in the Amended Complaint.

In conclusion, the Court finds that Defendants' admissions and stipulations established the fact of Plaintiff's non-consent as the law of this case.  For that reason, liability for the TCPA claims is decided as a matter of law, with only damages to be resolved at trial.

**2. Other Claims**

A. <u>Wash. Rev. Code. § 19.158 and Failure to Register</u>

Plaintiff alleges Defendants violated Washington Revised Code § 19.158.150 by making a "telephone solicitation" to him and not registering as telemarketers with the Department of Licensing. (Dkt. No. 83 at 17–18.)  He also alleges that Defendants violated Washington Revised Code § 19.158.110(1) by not identifying themselves within the first 30 seconds of the call, as discussed *infra*.  (*See id.*)  Plaintiff also invokes § 19.158.040, which lists calling practices that are "unprofessional conduct enforceable by the Department of Licensing.  (Dkt. No. 83 at 17.)

Defendants respond that there is no liability under § 19.158.040 because the definition of "solicitation" excludes someone who has "expressed no previous interest" in the goods or services.  (Dkt. No. 495 at 16) (citing Wash. Rev. Code § 19.158.020(10)).  This argument turns

on similar concepts of consent as discussed *supra* and for that reason is subject to the same analysis regarding stipulations of consent. However, it is not clear to the Court from Plaintiff's complaint whether he is alleging independent claims for violation of this section, and his original summary judgment motion does not mention it in a list of claims for which he was seeking judgment. (Dkt. No. 423 at 27.)

Similarly, Defendants argue that there is no private right of action to enforce § 19.158.150. (Dkt. No. 495 at 17.) Washington Revised Code § 19.158.150 states: "No salesperson shall solicit purchasers on behalf of a commercial telephone solicitor who is not currently registered with the department of licensing pursuant to this chapter. Any salesperson who violates this section is guilty of a misdemeanor." The fact that § 19.158.150 makes failure to register a misdemeanor supports Defendants' argument that it can only be enforced by a prosecutor. However, Washington Revised Code § 19.158.030 states, "[u]nfair and deceptive telephone solicitation is not reasonable in relation to the development and preservation of business. A violation *of this chapter* is an unfair or deceptive act in trade or commerce for the purpose of applying the consumer protection act, chapter 19.86 RCW" (emphasis added). The Court will assume *arguendo* then that § 19.158.150 could be enforced both criminally and by a civil action under the CPA. However, that is not the end of the analysis. The elements of a Washington Consumer Protection Act claim are "(1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) which affects the public interest, (4) injury to the plaintiff, and (5) a causal link between the unfair or deceptive act and the injury." *Quinn v. Cherry Lane Auto Plaza, Inc.*, 225 P.3d 266, 273 (Wash. Ct. App. 2009). The first three elements are established *per se* by § 19.158.030 and § 19.158.010 (legislative finding that "the widespread practice of fraudulent commercial telephone solicitation is a matter vitally affecting the public interest for

the purpose of applying the consumer protection act"). However, the Court finds that Plaintiff cannot establish injury and causation as to himself by virtue of Defendants' alleged failure to register with the Department of Licensing. He is injured by the fact of unwanted calls, but that is not traceable to the failure to register, specifically. Accordingly, the Court GRANTS summary judgment to Defendants as to Plaintiff's claim under § 19.158.150.

B. <u>Failure to Identify Claims: 47 C.F.R § 64.1200(d)(4); Wash. Rev. Code. § 80.36.390 and § 19.158.110(1)</u>

Plaintiff alleges that Defendants violated Washington Revised Code § 80.36.390 by failing to identify themselves within the first 30 seconds of a call. (Dkt. No. 83 at 18.) He also alleges violations of analogous requirements in 47 C.F.R § 64.1200(d)(4) and Washington Revised Code § 19.158.110(1). (*Id.* at 16–17.) There seems to be a miscommunication between the parties as to the claim under Washington Revised Code § 80.36.390. Plaintiff's complaint cites § 80.36.390(2). That section was recently renumbered as § 80.36.390(3), since the time Plaintiff's complaint was filed. *See Barton v. Real Innovation Inc.*, No. 3:24-CV-05194-DGE, 2025 WL 1993193, at *5 (W.D. Wash. July 17, 2025) (applying this section to claims arising before and after renumbering). But Defendants' motion addresses § 80.36.390(2)(a), which pertains to real estate agents, and argues that section does not apply. (Dkt. No. 495 at 17.) And they advance the global argument that there is no "telephone solicitation" where Plaintiff consented, but that is subject to the same consent analysis discussed *supra*. (*See id.*) Because Defendants' motion does not advance an argument that Plaintiff could in fact identify who was calling and their other arguments turn on consent, their motion is DENIED and Plaintiff's claims

under 47 C.F.R § 64.1200(d)(4) and (currently-numbered) § 80.36.390(3) and § 19.158.110(1) remain live for trial.[4]

### C. Commercial Electronic Mail Act, Wash. Rev. Code. § 19.190.060

Plaintiff alleges that Defendants violated Washington Revised Code § 19.190.060(1), the Washington Commercial Electronic Mail Act ("CEMA"), which provides:

> No person conducting business in the state may initiate or assist in the transmission of an electronic commercial text message to a telephone number assigned to a Washington resident for cellular telephone or pager service that is equipped with short message capability or any similar capability allowing the transmission of text messages.

Further, "electronic commercial text message" is defined as "an electronic text message sent to promote real property, goods, or services for sale or lease." Wash. Rev. Code § 19.190.010(2). Defendants argue that Plaintiff has no claim under this section because he consented to messages and did not text STOP to end them. (Dkt. No. 495 at 17.) Defendants cite to the Official Notes of legislative intent, which state, "The legislature recognizes that the number of *unsolicited* commercial text messages sent to cellular telephones and pagers is increasing. . . . "The legislature intents [sic] to limit the practice of sending *unsolicited* commercial text messages to cellular telephone or pager numbers in Washington." COMMUNICATIONS—COMMERCIAL ELECTRONIC TEXT MESSAGES, 2003 Wash. Legis. Serv. Ch. 137 (S.H.B.

---

[4] The Court observes that of the calls alleged in Plaintiff's complaint, he alleges that on April 13, 2021 and April 30, 2021 the caller promptly gave a name and identified themselves as calling on behalf of "the Cardinal Program." (Dkt. No. 83 at 9–10.) The complaint further alleges that "The Cardinal Program" is a d/b/a for 1st Time Home Buyer Program, Inc. (*Id.* at 9.) Thus, Plaintiff was able to identify the caller from the information in the call. However, at least as to the federal analog of this requirement, an FCC interpretation of the rule holds that providing a d/b/a is not sufficient to avoid liability under 47 C.F.R. 64.1200(d)(4) unless "the legal name of the business is also stated." Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 FR 44144-01. *See also Robison v. 7PN*, LLC, 569 F. Supp. 3d 1175, 1186 (D. Utah 2021) (discussing FCC opinion). Plaintiff alleges that in the call on April 20, 2021 no identifying information was given at all. (Dkt. No. 83 at 9.)

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 14

2007) (WEST) (emphasis added).  Likewise, this Court has previously observed that "CEMA was originally drafted to deal with *unwanted* commercial email messages and was later amended to address consumer concerns regarding commercial text messages and phishing activities." *See Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1050–51 (W.D. Wash. 2015) (discussing enactment history of CEMA).

Ultimately, the Court does not have to resolve the question of whether consent is a defense to a CEMA claim, because consent is stipulated.  For that reason, Defendants' summary judgment motion is DENIED and Plaintiff's motion is GRANTED as to this claim.

## CONCLUSION

Defendants' stipulations and admissions establish Plaintiff's lack of consent as a fact for trial.  Accordingly, Defendants' motion is DENIED and Plaintiff's motion is GRANTED as to the TCPA claims under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).  Defendants' motion is GRANTED as to Plaintiff's claim under Washington Revised Code § 19.158.150, for not being privately enforceable.  Defendants' motion is DENIED as to Plaintiff's claims regarding failure to identify, 47 C.F.R. § 64.1200(d)(4), Washington Revised Code § 80.36.390, and Washington Revised Code § 19.158.110(1)).  Defendants' motion is DENIED and Plaintiff's motion is GRANTED as to Washington Revised Code § 19.190.060.  The Court makes no finding at this time as to damages, which remains to be resolved.[5]

What remains for trial:

- Damages as to 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) claims;

---

[5] Plaintiff Reply brief in support of his motion for summary judgment also contained two motions to strike.  (*See* Dkt. No. 510 at 1–2.)  In light of the Court's rulings, the motions to strike are DENIED as moot.

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 15

- Liability and damages as to failure to identify claims—47 C.F.R. § 64.1200(d)(4), Wash. Rev. Code § 80.36.390(3), and Wash. Rev. Code § 19.158.110(1); and

- Damages as to Wash. Rev. Code § 19.190.060.

The Parties are ORDERED to meet and confer to discuss and identify the number of days necessary to complete trial. The Parties shall submit a joint status report no later than **August 29, 2025** identifying the number of trial days needed and identifying their availability between now and the first half of 2026 to conduct trial. The Court will then issue a new pretrial order identifying deadlines to prepare for trial.

The Clerk is directed to calendar this event.

Dated this 18th day of August, 2025.



David G. Estudillo
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT (DKT. NO. 497) AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 495) - 16